# EXHIBIT B

09/02/2003 18:32 FAX 2125880500          FROMMER LAWRENCE & HAUG          ☑001

```
                    ********************************
                ***   MULTI TX/RX REPORT    ***
                    ********************************

TX/RX NO              0669
PGS.                  40
TX/RX INCOMPLETE      -----
TRANSACTION OK        (1)   913125585700p540012
                      (2)   913124944440p540012

ERROR INFORMATION     -----
```

# FROMMER LAWRENCE & HAUG LLP

**745 Fifth Avenue**
**New York, New York 10151**
**Telephone: (212) 588-0800**
**Facsimile: (212) 588-0500**
**E-mail: Firm@flhlaw.com**

## MULTI-FACSIMILE COVER LETTER

| | | | | | |
|---|---|---|---|---|---|
| **To:** | Christine J. Siwik, Esq. | **Firm:** | Winston & Strawn | **Facsimile:** | (312) 558-5700 |
| **cc:** | Fred H. Bartlit, Jr., Esq. | **Firm:** | Bartlit Beck Herman Palenchar & Scott | **Facsimile:** | (312) 494-4440 |
| | Peter B. Bensinger, Jr., Esq. | **Firm:** | Bartlit Beck Herman Palenchar & Scott | **Facsimile:** | (312) 494-4440 |

**From:** Edgar Haug          **Date:** September 2, 2003

**Re:** Shire Laboratories, Inc. v. Barr Laboratories, Inc.
Civil Action No. 03-CV-1219 (VM) (DFE)
FLH Ref. No. 540012-5001

**Number of Pages:** **39**
(including cover page)

If you do not receive all pages or are unable to read the transmission, please call and ask for Devon Bowers (Ext. 2636)

# FROMMER LAWRENCE & HAUG LLP
### 745 Fifth Avenue
### New York, New York 10151
### Telephone: (212) 588-0800
### Facsimile: (212) 588-0500
### E-mail: Firm@flhlaw.com

## MULTI-FACSIMILE COVER LETTER

**To:** Shona S. McDiarmid, Ph.D.   **Firm:** Shire Biochem Inc.   **Facsimile:** (450) 978-7994
Vice President,
Global Intellectual Property

**From:** Edgar Haug       **Date:** September 2, 2003

**Re:** *Shire Laboratories Inc. v. Barr Laboratories, Inc.*
(No. 03-CV-1219 (VM) (DFE))
FLH Ref No.: 540012-5000

**Number of Pages:** <u>40</u>
(including cover page)

If you do not receive all pages or are unable to read the transmission, please call and ask for Devon Bowers (Ext. 2636)

### CONFIDENTIALITY NOTICE

The documents accompanying this transmission contain confidential information intended for a specific individual and purpose. The information is private. and is legally protected by law. If you are not the intended recipient. you are hereby notified that any disclosure. copying. distribution, or the taking of any action in reliance on the contents of this facsimile is strictly prohibited

00117585

# FROMMER LAWRENCE & HAUG LLP

### 745 FIFTH AVENUE  NEW YORK, NEW YORK 10151
### TEL: (212) 588-0800  FAX: (212) 588-0500

WILLIAM S. FROMMER
WILLIAM F. LAWRENCE
EDGAR H. HAUG
MATTHEW K. RYAN
BARRY S. WHITE
THOMAS J. KOWALSKI
JOHN R. LANE
DENNIS M. SMID*
DANIEL G. BROWN
BARBARA Z. MORRESSEY
STEVEN M. AMUNDSON
MARILYN MATTHES BROGAN
JAMES K. STRONSKI
CHARLES J. RAUBICHECK
GRACE L. PAN*
GORDON KESSLER
MARK W. RUSSELL*
JEFFREY A. HOVDEN
RONALD R. SANTUCCI
RICHARD E. PARKE
ANDREW M. BERDON
LEONARD J. SANTISI
PORTER F. FLEMING

A. THOMAS S. SAFFORD
JEROME ROSENSTOCK
RAYMOND R. WITTEKIND, PH.D.
Of Counsel

BRUNO POLITO
CHRISTIAN M. SMOLIZZA
GLENN F. SAVIT
ROBERT E. COLLETTI
DEENA LEVY WEINHOUSE
DARREN M. SIMON
JOHN G. TAYLOR
DAVID A. ZWALLY
SAMUEL H. MEGERDITCHIAN
KEVIN MURPHY
TERRI-LEE YOUNG
PEARL TENG LING SIEW
DAMON A. TREITLER
TEDD W. VAN BUSKIRK
STEPHEN J. LIEB
FRANCINE S. ADLER, DPM
HANS R. MAHR*
ARTHUR L. HOAG
SANDRA KUZMICH, PH.D.
DANIEL VELEZ
ALI R. SAMADI
SEAN J. GRYGIEL
WENDY R. FLEISCHER
JOYCE W. LUK*
DILLON KIM
LESLIE C. ALLEN*
*Admitted to a Bar
other than New York

September 2, 2003

*__Via Facsimile__*
*312-558-5700*

Christine J. Siwik, Esq.
Winston & Strawn
35 West Wacker Drive
Chicago, Illinois  60610

Re:   U.S. Patent No. 6,605,300 B1 – Adderall XR®
      FLH Ref. No. 540012-5001

Dear Christine:

We enclose a courtesy copy of the complaint that we filed today in the Southern District of New York on behalf of our client Shire Laboratories Inc.  By this complaint, Shire alleges infringement by Barr of U.S. Patent No. 6,605,300 B1.

Sincerely,

*Ed Haug*

EHH/sk
Enclosure

cc:   Fred H. Bartlit, Jr., Esq. (w/ enclosure)
      Peter B. Bensinger, Jr., Esq. (w/ enclosure)

CALIFORNIA OFFICE
4660 LA JOLLA VILLAGE DR. SUITE 850 SAN DIEGO, CA 92122
TEL: (858) 731-5000  FAX: (858) 731-5001

00144931

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

 

---

SHIRE LABORATORIES INC.,

        **Plaintiff,**

      v.

BARR LABORATORIES, INC.,

        **Defendant.**

      :
      :
      :
      :
      :
      :
      :
      :
      :
      x

**Civil Action No.**



---

## COMPLAINT

      Plaintiff Shire Laboratories Inc. ("Shire"), by its attorneys, for its Complaint, alleges as follows:

### Nature of the Action

      1.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

### Jurisdiction and Venue

      2.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). The defendant is subject to personal jurisdiction in this Court under N.Y.C.P.L.R. § 301 and F.R.C.P. 4.

      3.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c), and § 1400(b).

### The Parties

4.    Shire is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1550 East Gude Drive, Rockville, Maryland 20850.

5.    Upon information and belief, defendant Barr Laboratories, Inc. ("Barr") is a corporation organized and existing under the laws of the State of New York, having a place of business at 2 Quaker Road, PO Box 2900, Pomona, New York 10970, and is transacting business in New York and contracting to supply goods and services in New York.

### Background

6.    United States Patent No. 6,605,300 B1 ("the '300 patent"), entitled "Oral Pulsed Dose Drug Delivery System" (Exhibit A hereto), was duly and legally issued on August 12, 2003, to Shire upon assignment from Beth A. Burnside, Xiaodi Guo, Kimberly Fiske, Richard A. Couch, Donald J. Treacy, Rong-Kun Chang, Charlotte McGuinness, and Edward M. Rudnic.

7.    The '300 patent claims, *inter alia*, a pharmaceutical formulation for the delivery of a mixture of amphetamine base salts.

8.    Shire is the owner of New Drug Application ("NDA") No. 21-303, which was approved by the Food and Drug Administration ("FDA") for the manufacture and sale of a pharmaceutical composition containing mixed amphetamine salts for the treatment of Attention Deficit Hyperactivity Disorder ("ADHD"). Shire US Inc. (a related company) markets and sells this composition in the United States under the trade name Adderall XR®.

2

**Claim for Relief**

9.    Barr sent Shire a "Notification Pursuant to § 505(j)(2)(B)(ii) of the Federal

Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95)" dated

August 15, 2003 ("Barr's Notice Letter") (Exhibit B hereto).

10.    Upon information and belief, Barr submitted Abbreviated New Drug

Application ("ANDA") No. 76-536 ("Barr's ANDA") to the FDA under § 505(j) of the Federal

Food, Drug, and Cosmetic Act (21 U.S.C. §355(j)) seeking approval to engage in the commercial

manufacture, use, and sale of Barr's proposed drug product that is a capsule containing a mixture

of four amphetamine salts at the 5 mg, 10 mg, 15 mg, 20 mg, 25 mg and 30 mg strengths.

11.    In Barr's Notice Letter, Barr notified Shire that as part of its ANDA it had

filed a paragraph IV certification to obtain approval to engage in the commercial manufacture,

use or sale of an amphetamine salt product before the expiration of the '300 patent. Barr's

Notice Letter also states that it has certified to the FDA that in its opinion and to the best of its

knowledge, the '300 patent is invalid, unenforceable, and/or will not be infringed by the

commercial manufacture, use or sale of the drug product described in Barr's ANDA.

12.    21 U.S.C. § 355(j)(2)(B)(ii) requires that a letter notifying a patent holder

of the filing of an ANDA containing a Paragraph IV certification "include a detailed statement of

the factual and legal basis of the applicant's opinion that the patent is not valid or will not be

infringed." Likewise, 21 C.F.R. § 314.95(c)(6) requires a Paragraph IV notification to include

"[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not

valid, unenforceable, or will not be infringed." The detailed statement is to include "(i) [f]or

each claim of a patent alleged not to be infringed, a full and detailed explanation of why the

claim is not infringed" and (ii) [f]or each claim of a patent alleged to be invalid or unenforceable,

3

a full and detailed explanation of the grounds supporting the allegation." *Id.*

13.    Barr's Notice Letter contains no information whatsoever that demonstrates the '300 patent will not be infringed by the commercial manufacture, use or sale of the drug product described in Barr's ANDA. In particular, Barr's Notice Letter does not provide a detailed statement of the factual and legal basis to support an opinion that the '300 patent will not be infringed by the commercial manufacture, use or sale of the drug product described in Barr's ANDA. Barr's Notice Letter also does not identify each claim of the '300 patent that it alleges will not be infringed or provide a full and detailed explanation of why any claim is not infringed. In addition, while Barr's Notice Letter alleges that the claims of the '300 patent are invalid as obvious, Barr's Notice Letter does not include a full and detailed statement of the bases or grounds for that invalidity allegation.

14.    On information and belief, at the time Barr sent its Notice Letter to Shire, Barr was aware of the statutory provisions and regulations referred to in paragraph 12, above.

15.    In Barr's Notice Letter, Barr did not provide the detailed statement required, and therefore Barr failed to comply with the statutory provisions and regulations referred to in paragraph 12, above.

16.    Upon information and belief, Barr's submission to the FDA of ANDA No. 76-536 with a paragraph IV certification for the '300 patent and for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of a drug product before the expiration of the '300 patent is an act of infringement of one or more claims of the '300 patent under 35 U.S.C. § 271(e)(2)(A).

17.    Upon information and belief, Barr's commercial manufacture, use, sale, offer for sale, or importation into the United States of the proposed drug product that is the

4

subject of ANDA 76-536, a capsule containing a mixture of four amphetamine salts at the 5 mg,

10 mg, 15 mg, 20 mg, 25 mg and 30 mg strengths, will infringe one or more claims of the '300

patent.

18.     Upon information and belief, Barr has been aware of the existence of the

'300 patent and has provided no proper basis to support an allegation of noninfringement,

invalidity, or unenforceability.  Among other things, Barr did not exercise due care when it

submitted a paragraph IV certification for the '300 patent and made a baseless certification.

Accordingly, the acts of infringement alleged above were deliberate and willful, thus rendering

this case "exceptional" as that term is set forth in 35 U.S.C. § 285.

19.     The acts of infringement set forth above will cause Shire irreparable harm

for which it has no adequate remedy at law, unless Barr is preliminarily and permanently

enjoined by this Court.

### Prayer for Relief

WHEREFORE, plaintiff respectfully requests the following relief:

(a)     A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(2)(A), Barr's

submission to the FDA of ANDA 76-536 with a paragraph IV certification, to obtain approval

for the commercial manufacture, use or sale in the United States of its mixed amphetamine salts

drug product, was an act of infringement of the '300 patent;

(b)     A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(4)(A), the

effective date of any approval of Barr's mixed amphetamine salts drug product that is the subject

of ANDA 76-536 shall be no earlier than the expiration date of the '300 patent;

(c)     A judgment pursuant to 35 U.S.C. § 271(e)(4)(A) preliminarily and

permanently enjoining Barr and its officers, agents, servants, employees and attorneys, and those persons in active concert or participation or privity with them or any of them, from engaging in the commercial manufacture, use, offer to sell or sale within the United States or importation into the United States, of the mixed amphetamine salts drug product that is the subject of ANDA 76-536 until the expiration of the '300 patent;

(d)    A judgment awarding Shire damages or other monetary relief, pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, if Barr commercially manufactures, uses, offers for sale, sells or imports any product that infringes the '300 patent;

(e)    A judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional case and awarding Shire its attorneys' fees;

(f)    A judgment awarding Shire its costs and expenses in this action; and

(g)    A judgment awarding Shire any other and further relief as this Court may deem just and proper.

**Jury Demand**

Plaintiff demands a trial by jury of all issues in this action.

September 2, 2003

FROMMER LAWRENCE & HAUG LLP

By: _____
     Edgar H. Haug (EH 6243)
     Steven M. Amundson (SA 0980)
     Charles J. Raubicheck (CR 5058)
     Sandra Kuzmich (SK 5484)
     745 Fifth Avenue
     New York, New York 10151
     Telephone:  (212) 588-0800
     Facsimile:  (212) 588-0500

     BARTLIT BECK HERMAN
       PALENCHAR & SCOTT
     Fred H. Bartlit, Jr. (FB 0197)
     Peter B. Bensinger, Jr. (PB 1671)
     Jill Trumbull-Harris (JT 2966)
     54 West Hubbard Street
     Chicago, Illinois 60610
     Telephone: (312) 494-4400
     Facsimile:  (312) 494-4440

     Attorneys for Plaintiff
     Shire Laboratories Inc.

Exhibit A



US006605300B1

(12) **United States Patent**     (10) Patent No.: **US 6,605,300 B1**
Burnside et al.     (45) Date of Patent:     **Aug. 12, 2003**

(54) **ORAL PULSED DOSE DRUG DELIVERY SYSTEM**

(75) Inventors: Beth A. Burnside, Silver Spring, MD (US); Xiaodi Guo, Derwood, MD (US); Kimberly Fiske, Alexandria, VA (US); Richard A. Couch, Bethesda, MD (US); Donald J. Treacy, Arnold, MD (US); Rong-Kun Chang, Hockessin, DE (US); Charlotte M. McGuinness, Bethesda, MD (US); Edward M. Rudnic, North Potomac, MD (US)

(73) Assignee: Shire Laboratories, Inc., Rockville, MD (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/807,462

(22) PCT Filed: Oct. 20, 1999

(86) PCT No.: PCT/US99/24554

§ 371 (c)(1),
(2), (4) Date: Jul. 19, 2001

(87) PCT Pub. No.: WO00/23055

PCT Pub. Date: Apr. 27, 2000

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/176,542, filed on Oct. 21, 1998, now Pat. No. 6,322,819.

(51) Int. Cl.$^7$ .................. A61K 33/22; A61K 33/24; A61K 33/36; A61K 31/135

(52) U.S. Cl. ............... 424/452; 424/458; 424/468; 424/469; 424/470; 424/471; 424/472; 424/514; 424/649

(58) Field of Search ............. 424/457, 458, 424/468, 469, 470, 471, 472; 514/649

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,723,958 A | 2/1988 | Pope et al. ............ 604/890.1 |
| 4,765,989 A | 8/1988 | Wong et al. ............ 424/473 |
| 4,871,549 A | 10/1989 | Ueda et al. ............ 424/494 |
| 4,891,230 A | 1/1990 | Geoghegan et al. ...... 424/461 |
| 4,894,240 A | 1/1990 | Geoghegan et al. ...... 424/497 |
| 4,902,516 A | 2/1990 | Korsatko et al. ........ 424/497 |
| 4,917,899 A | 4/1990 | Geoghegan et al. ...... 424/461 |
| 5,002,776 A | 3/1991 | Geoghegan et al. ...... 424/497 |
| 5,011,692 A | 4/1991 | Fujioka et al. ......... 424/426 |
| 5,011,694 A | 4/1991 | Nuernberg et al. ...... 424/464 |
| 5,051,262 A | 9/1991 | Panoz et al. ........... 424/468 |
| 5,093,200 A | 3/1992 | Watanabe et al. ....... 428/407 |
| 5,226,902 A | 7/1993 | Bae et al. ............. 604/892.1 |
| 5,229,131 A | 7/1993 | Amidon et al. ......... 424/451 |
| 5,275,819 A | 1/1994 | Amer et al. ........... 424/408 |
| 5,312,388 A | * 5/1994 | Wong et al. ........... 604/892.1 |
| 5,364,620 A | 11/1994 | Geoghegan et al. ...... 424/497 |
| 5,395,628 A | 3/1995 | Noda et al. ........... 424/490 |
| 5,407,686 A | 4/1995 | Patel et al. ........... 424/468 |
| 5,474,786 A | 12/1995 | Kotwal et al. .......... 424/472 |
| 5,616,345 A | 4/1997 | Geoghegan et al. ...... 424/497 |

| | | |
|---|---|---|
| 5,800,836 A | 9/1998 | Morella et al. ......... 424/489 |
| 5,824,341 A | 10/1998 | Segh et al. ............ 424/473 |
| 5,824,342 A | 10/1998 | Cherukuri et al. ....... 424/484 |
| 5,824,343 A | 10/1998 | Na et al. ............. 424/486 |
| 5,837,284 A | 11/1998 | Mehta et al. .......... 424/459 |
| 5,840,329 A | 11/1998 | Bai ................... 424/458 |
| 5,885,616 A | 3/1999 | Hsiao et al. ........... 424/472 |
| 5,885,998 A | * 3/1999 | Bencherif et al. ....... 514/256 |
| 5,891,474 A | 4/1999 | Busetti et al. ......... 424/490 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| WO | WO87/00044 | 1/1987 | ......... A61K/9/22 |
| WO | WO90/09168 | 8/1990 | ......... A61K/9/22 |

OTHER PUBLICATIONS

Gazzaniga, et al., *S.T.P. Pharma Sciences*, vol. 5, No. 1, gs. 83–88 (1995), Time dependent oral delivery for colon targeting.
*Modern Pharmaceutics*, Banker, et al., eds., Marcel Dekker, Inc., New York, p. 350 (1996)
Walia, et al., *Pharm. Dev. Tech.*, vol. 3, No. 1, pp. 103–113 (1998), Preliminary Evaluation of an Aqueous Wax Emulsion for Controlled–Release Coating.
Wilding, et al., *Pharmaceutical Research*, vol. 9, No. 5, pp. 654–657 (1992), Gastrointestinal Transit and Systemic Absorption of Captopril from Pulsed–Release Formulation.
Xu, et al., *Pharmaceutical Research*, vol. 10, No. 8, pp. 1144–1152 (1993), Programmable Drug Delivery from an Erodible Association Polymer System
Conte, et al., *Biomaterials*, vol. 14, No. 13, pp. 1017–1023 (1993), Press–coated tablets for time–programmed release of drugs.
Gazzaniga, et al., *Eur. J. Pharm. Biopharm.*, vol. 40, No. 4, pp. 246–250 (1994), Oral Chronotopic Drug Delivery System: Achievement of Time and/or Site Specificity.
Pozzi, et al., *J. Controlled Release*, vol. 31, pp. 99–108 (1994), The Time Clock System: a new oral dosage form for fast and complete release of drug after a predetermined lag time.
Snire Laboratory Inc's Complaint against Barr Laboratories based on Parent U.S. patent 6,322,815 in U.S. District Court for the Southern District of New York (Case No. 03–CV–1219(VM)(DFE)) 2003.
Barr Laboratories' Answer, Affirmative Defenses and Counterclaim in Case No. 03–CV–1219(VM)(DFE) (S.D.N.Y.) 2003.
Barr's Paragraph IV Certification against Parent U.S. Patent 6,322,819 on Jan. 14, 2003.

* cited by examiner

Primary Examiner—Russell Travers
(74) *Attorney, Agent, or Firm*—Millen, White, Zelano & Branigan, P.C.

(57) **ABSTRACT**

A multiple pulsed dose drug delivery system for pharmaceutically active amphetamine salts, comprising an immediate-release component and an enteric delayed-release component wherein (1) the enteric release coating has a defined minimum thickness and/or (2) there is a protective layer between the pharmaceutically active amphetamine salt and the enteric release coating and/or (3) there is a protective layer over the enteric release coating. The product can be composed of either one or a number of beads in a dosage form, including either capsule, tablet, or sachet method for administering the beads.

**18 Claims, 7 Drawing Sheets**



**FIG. 1**



# FIG. 2A



# FIG. 2B



FIG. 2C



## FIG. 3



## FIG. 4



**FIG. 5**

**FIG. 6**



**FIG. 7**



**FIG. 8**

US 6,605,300 B1

# 1

## ORAL PULSED DOSE DRUG DELIVERY SYSTEM

This application is a 371 of PCT/US99/24554 filed Oct. 20, 1999, which is continuation-in-part of application Ser. No. 09/176,542, filed Oct. 21, 1998, now U.S. Pat. No. 6,322,819 the contents of which are incorporated herein by reference.

This invention pertains to a multiple unit dosage form delivery system comprising one or more amphetamine salts for administering the amphetamine salts to a recipient.

## BACKGROUND OF THE INVENTION

Traditionally, drug delivery systems have focused on constant/sustained drug output with the objective of minimizing peaks and valleys of drug concentrations in the body to optimize drug efficacy and to reduce adverse effects. A reduced dosing frequency and improved patient compliance can also be expected for the controlled/sustained drug delivery systems, compared to immediate release drug preparations However, for certain drugs, sustained release delivery is not suitable or is affected by the following factors:

First pass metabolism: Some drugs, such as $\beta$ blockers, $\beta$-estradiol, and salicylamide, undergo extensive first pass metabolism and require fast drug input to saturate metabolizing enzymes in order to minimize presystemic metabolism. Thus, a constant/sustained oral method of delivery would result in reduced oral bioavailability.

Biological tolerance: Continuous release drug plasma profiles are often accompanied by a decline in the pharmacotherapeutic effect of the drug, e.g., biological tolerance of transdermal nitroglycerin.

Chronopharmacology and circadian rhythms: Circadian rhythms in certain physiological functions are well established. It has been recognized that many symptoms and onset of disease occur during specific time periods of the 24 hour day, e.g., asthma and angina pectoris attacks are most frequently in the morning hours (1,2).

Local therapeutic need: For the treatment of local disorders such as inflammatory bowel disease, the delivery of compounds to the site of inflammation with no loss due to absorption in the small intestine is highly desirable to achieve the therapeutic effect and to minimize side effects.

Gastric irritation or drug instability in gastric fluid: For compounds with gastric irritation or chemical instability in gastric fluid, the use of a sustained release preparation may exacerbate gastric irritation and chemical instability in gastric fluid.

Drug absorption differences in various gastrointestinal segments: In general, drug absorption is moderately slow in the stomach, rapid in the small intestine, and sharply declining in the large intestine. Compensation for changing absorption characteristics in the gastrointestinal tract may be important for some drugs. For example, it is rational for a delivery system to pump out the drug much faster when the system reaches the distal segment of the intestine, to avoid the entombment of the drug in the feces.

Pulsed dose delivery systems, prepared as either single unit or multiple unit formulations, and which are capable of releasing the drug after a predetermined time, have been studied to address the aforementioned problematic areas for

# 2

sustained release preparations. These same factors are also problematic in pulsed dose formulation development. For example, gastrointestinal transit times vary not only from patient to patient but also within patients as a result of food intake, stress, and illness; thus a single-unit pulsed-release system may give higher variability compared to a multiple unit system. Additionally, drug layering or core making for multiple unit systems is a time-consuming and hard-to-optimize process. Particularly challenging for formulation scientists has been overcoming two conflicting hurdles for pulsatile formulation development, i.e., lag time and rapid release.

Various enteric materials, e.g., cellulose acetate phthalate, hydroxypropyl methylcellulose phthalate, polyvinyl acetate phthalate, and the EUDRAGIT® acrylic polymers, have been used as gastroresistant, enterosoluble coatings for single drug pulse release in the intestine (3). The enteric materials, which are soluble at higher pH values, are frequently used for colon-specific delivery systems. Due to their pH-dependent attributes and the uncertainty of gastric retention time, in-vivo performance as well as inter- and intra-subject variability are major issues for using enteric, coated systems as a time-controlled release of drugs.

A retarding swellable hydrophilic coating has been used for oral delayed release systems (4,5). It was demonstrated that lag time was linearly correlated with coating weight gain and drug release was pH independent.

Hydroxypropyl methylcellulose barriers with erodible and/or gellable characteristics derived using press coating technology for tablet dosage forms have been described to achieve time-programmed release of drugs (6). Barrier formulation variables, such as grade of hydroxypropyl methylcellulose, water-soluble and water-insoluble excipients, significantly altered the lag time and the release rate from the center cores.

Special grades of hydroxypropyl methylcellulose, e.g., METOLOSE® 60SH, 90SH (Shin-Etsu Ltd., Japan), and METHOCEL® F4M (Dow Chemical Company, USA), as a hydrophilic matrix material have been used to achieve bimodal drug release for several drugs, i.e., aspirin, ibuprofen, and adinazolam (7). Bimodal release is characterized by a rapid initial release, followed by a period of constant release, and finalized by a second rapid drug release.

Tablets or capsules coated with a hydrophobic wax-surfactant layer, made from an aqueous dispersion of carnauba wax, beeswax, polyoxyethylene sorbitan monooleate, and hydroxypropyl methylcellulose have been used for rapid drug release after a predetermined lag time. However, even though a two-hour lag time was achieved for the model drug theophylline at a higher coating level (60%), three hours were required for a complete release of theophylline after the lag time. (8)

A sustained-release drug delivery system is described in U.S. Pat. No. 4,871,549. When this system is placed into dissolution medium or the gastrointestinal tract, water influx and the volume expansion of the swelling agent cause the explosion of the water permeable membrane. The drug thus releases after a predetermined time period. The OROS® push-pull system (Alza Company) has been developed for pulsatile delivery of water-soluble and water-insoluble drugs (9,10), e.g. the OROS-CT® system and is based on the swelling properties of an osmotic core compartment which provides a pH-independent, time-controlled drug release.

The PULSINCAP® dosage form releases its drug content at either a predetermined time or at a specific site (e.g., colon) in the gastrointestinal tract (11). The drug formula-

US 6,605,300 B1

3

tion is contained within a water-insoluble capsule body and is sealed with a hydrogel plug. Upon oral administration, the capsule cap dissolves in the gastric juice and the hydrogel plug swells. At a controlled and predetermined time point, the swollen plug is ejected from the PULSINCAP® dosage form and the encapsulated drug is released. A pulsatile capsule system containing captopril with release after a nominal 5-hr period was found to perform reproducibly in dissolution and gamma scintigraphy studies. However, in the majority of subjects, no measurable amounts of the drug were observed in the blood, possibly due to instability of the drug in the distal intestine. (12)

ADDERALL® comprises a mixture of four amphetamine salts, dextroamphetamine sulfate, dextroamphetamine saccharate, amphetamine aspartate monohydrate and amphetamine sulfate, which in combination, are indicated for treatment of Attention Deficit Hyperactivity Disorder in children from 3–10 years of age. One disadvantage of current treatment is that a tablet form is commonly used which many young children have difficulty in swallowing. Another disadvantage of current treatment is that two separate dose are administered, one in the morning and one approximately 4–6 hours later, commonly away from home under other than parental supervision. This current form of treatment, therefore, requires a second treatment which is time-consuming, inconvenient and may be problematic for those children having difficulty in swallowing table formulations.

## SUMMARY OF THE INVENTION

Accordingly, in view of a need for successfully administering a multiple unit pulsed dose of amphetamine salts and mixtures thereof, the present invention provides an oral multiple unit pulsed dose delivery system for amphetamine salts and mixtures thereof. FIG. 1 illustrates the desired target plasma level profile of the pharmaceutical active contained within the delivery system.

In accordance with a preferred embodiment of the present invention, there is provided a pharmaceutical composition for delivering one or more pharmaceutically active amphetamine salts that includes:

(a) one or more pharmaceutically active amphetamine salts that are covered with an immediate release coating, and

(b) one or more pharmaceutically active amphetamine salts that are covered with an enteric release coating wherein (1) the enteric release coating has a defined minimum thickness and/or (2) there is a protective layer between the at least one pharmaceutically active amphetamine salt and the enteric release coating and/or (3) there is a protective layer over the enteric release coating.

In one embodiment, the immediate release and enteric release portions of the composition are present on the same core.

In another embodiment, the immediate release and enteric release components are present on different cores.

It is also contemplated that the composition may include a combination of the hereinabove referred to cores (one or more cores that include both components on the same core and one or more cores that include only one of the two components on the core).

The present invention provides a composition in which there is immediate release of drug and enteric release of drug wherein the enteric release is a pulsed release and wherein the drug includes one or more amphetamine salts and mixtures thereof.

4

The immediate release component releases the pharmaceutical agent in a pulsed dose upon oral administration of the delivery system.

The enteric release coating layer retards or delays the release of the pharmaceutical active or drug for a specified time period ("lag time") until a predetermined time, at which time the release of the drug is rapid and complete, i.e., the entire dose is released within about 30–60 minutes under predetermined environmental conditions, i.e. a particular location within the gastrointestinal tract.

The delay or lag time will take into consideration factors such as transit times, food effects, inflammatory bowel disease, use of antacids or other medicaments which alter the pH of the GI tract.

In a preferred embodiment, the lag time period is only time-dependent, i.e., pH independent. The lag time is preferably within 4 to 6 hours after oral administration of the delivery system.

In one aspect, the present invention is directed to a composition that provides for enteric release of at least one pharmaceutically active amphetamine salt, including at least one pharmaceutically active amphetamine salt that is coated with an enteric coating wherein (1) the enteric release coating has a defined minimum thickness and/or (2) there is a protective layer between the at least one pharmaceutically active amphetamine salt and the enteric release coating and/or (3) there is a protective layer over the enteric release coating.

In attempting to provide for enteric release of an amphetamine salt, applicants found that use of an enteric release coating as generally practiced in the art did not provide effective enteric release.

Typical enteric coating levels did not meet the above requirements for the desired dosage profile of amphetamine salts. Using the typical amount of enteric coating, $(10–20\mu)$ resulted in undesired premature leakage of the drug from the delivery system into the upper gastrointestinal tract and thus no drug delivery at the desired location in the gastrointestinal tract after the appropriate lag time. Thus this coating did not meet the requirements for the drug release profile to provide full beneficial therapeutic activity at the desired time.

Surprisingly, applicants found that using a thicker application of enteric coating on the formulation allowed for the second pulsed dose to be released only and completely at the appropriate time in the desired predetermined area of the gastrointestinal tract, i.e., in the intestine.

This was surprising because an increase in thickness of about $5–10\mu$ of enteric coatings above a minimum thickness of about $10–20\mu$ typically does not have a significant effect on release of drug from within such coatings. Enteric coatings typically are pH dependent and will only dissolve/disperse when exposed to the appropriate environment. Typically, application of a thicker coating (greater than $20\mu$) will only marginally increase the time for complete release at the appropriate environmental condition i.e., for a brief period of time (20 minutes). Using the typical coating, applicants could not achieve the desired result—rather, the coating leaked before the predetermined time in an inappropriate environment resulting in significant loss of the therapeutic agent.

Accordingly, in one aspect, the pulsed enteric release of the amphetamine salts is accomplished by employing a certain minimum thickness of the enteric coating.

In one embodiment of the invention, the pulsed dose delivery comprises a composition which comprises one or more pharmaceutically active amphetamine salts; an enteric

US 6,605,300 B1

5

coating over the one or more pharmaceutically active amphetamine salts, wherein the thickness of the enteric coating layer is at least 25μ; a further layer of one or more pharmaceutically active amphetamine salts over the enteric coating layer; and an immediate release layer coating. The thicker enteric coating surprisingly provides the required delayed immediate release of the pharmaceutically active amphetamine salt at the desired time in the desired area of the gastrointestinal tract. FIG. 2 illustrates a model of this delivery system.

In this aspect, the one or more pharmaceutically active amphetamine salts can be provided within or as a part of a core seed around which the enteric coating is applied. Alternatively, a core seed can be coated with one or more layers of one or more pharmaceutically active amphetamine salts.

It has further been discovered that a delayed immediate release drug delivery can also be accomplished by coating the drug first with a protective layer prior to applying the enteric coating.

Thus, in another embodiment, the pulsed enteric release is accomplished by employing a protective layer between the drug and the enteric coating. When using a protective coating, the enteric coating may be of an increased thickness or may be of lower thickness.

Thus, in another aspect, the object of the invention is met by providing a composition comprising one or more pharmaceutically active amphetamine salts; a protective layer coating over the one or more pharmaceutically active amphetamine salt layer(s), and an enteric coating layer over the protective coating layer; a further pharmaceutically active amphetamine salt layer and an immediate release layer coating. In a preferred embodiment of this aspect, the thickness of the enteric coating is at least 25μ, and the protective layer comprises an immediate release coating.

With respect to this embodiment of the invention, the one or more pharmaceutically active amphetamine salts can be provided within or as a part of a core seed, during the core seed manufacturing process, around which the protective coating is applied. Alternatively, a core seed can be coated with one or more layers of one or more pharmaceutically active amphetamine salts.

In another embodiment, the pulsed enteric release is accomplished by employing a protective layer over the enteric coating.

Accordingly, in this embodiment of the present invention, there is provided a pulsed dose release drug delivery system comprising one or more pharmaceutically active amphetamine salts; an enteric coating layer over the pharmaceutically active amphetamine salt layer(s); and a protective layer over the enteric coating; a second pharmaceutically active amphetamine salt layer; and an immediate release layer coating.

In one aspect of this embodiment, the protective layer is comprised of one or more components, which includes an immediate release layer and a modifying layer. The modifying layer is preferably comprised of a semi water-permeable polymer. Applicants have surprisingly found that a semi-permeable polymer coating used in combination with an immediate release layer coating provided a delayed pulsed release drug delivery profile when layered over the enteric coating.

Thus, in this embodiment, the protective layer comprises a semi-permeable polymer and an immediate release coating layer. In a preferred embodiment, the modifying layer comprises a first layer of a semi-permeable polymer which is adjacent to the enteric coating layer and a second coating

6

layer over the semi-permeable polymer coating layer comprising an immediate release polymer coating layer.

In one aspect of this embodiment, a semi-permeable polymer, which may comprise a low water-permeable pH-insensitive polymer, is layered onto the outer surface of the enteric layer, in order to obtain prolonged delayed release time. This semi-permeable polymer coating controls the erosion of the pH-sensitive enteric polymer in an alkaline pH environment in which a pH-sensitive polymer will dissolve rapidly. Another pH-sensitive layer may be applied onto the surface of a low water-permeability layer to further delay the release time.

In a still further aspect of the invention, in addition to a protective layer, the composition comprises an acid which is incorporated into the pharmaceutical active layer or coated onto the surface of the active layer to reduce the pH value of the environment around the enteric polymer layer. The acid layer may also be applied on the outer layer of the pH-sensitive enteric polymer layer, followed by a layer of low water-permeability polymer. The release of the active thus may be delayed and the dissolution rate may be increased in an alkaline environment.

In a further embodiment, the protective coating may be used both over the drug and over the enteric coating.

With respect to this embodiment of the invention, the one or more pharmaceutically active amphetamine salts can be provided within or as a part of a core seed, during the core seed manufacturing process, around which the enteric coating is applied. Alternatively, a core seed can be coated with one or more layers of one or more pharmaceutically active amphetamine salts.

The drug delivery system of the present invention as described herein preferably comprises one or a number of beads or beadlets in a dosage form, either capsule, tablet, sachet or other method of orally administering the beads.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates a multiple pulse drug delivery system target plasma profile of the drug delivery system of the present invention. The profile reflects an immediate-release component followed by a delayed-release component.

FIG. 2a graphically illustrates a pulsed dose delivery system.

FIGS. 2b and c graphically illustrate the drug release mechanism from the proposed delivery system.

FIG. 3 is a plot of the percent drug released versus time from the drug-loaded pellets described in Example 1 which exemplifies the immediate release component of the present invention.

FIG. 4 is a plot of the percent drug released versus time from the coated pellets described in Example 2 which exemplifies the immediate release component and the delayed release components of the present invention.

FIG. 5 is a plot of the percent drug released versus time from the coated pellets of Example 3 which exemplifies the immediate release component and the delayed release components of the present invention.

FIG. 6 illustrates the drug release profile of coated pellets described in Example 4 which exemplifies the immediate release component and the delayed release components of the present invention.

FIG. 7 is a plot of a profile of plasma amphetamine concentration after administration of a composite capsule containing the immediate release pellets and delayed release pellets from Examples 1 and 2, respectively.

FIG. 8 is a plot of a profile of plasma amphetamine concentration after administration of a composite capsule

US 6,605,300 B1

7

containing the immediate release pellets and delayed release pellets from Examples 1 and 3, respectively.

## DETAILED DESCRIPTION OF THE INVENTION

The present invention comprises a core or starting seed, either prepared or commercially available product. The cores or starting seeds can be sugar spheres; spheres made from microcrystalline cellulose and any suitable drug crystals.

The materials that can be employed in making drug-containing pellets are any of those commonly used in pharmaceutics and should be selected on the basis of compatibility with the active drug and the physicochemical properties of the pellets. The additives except active drugs are chosen below as examples:

Binders such as cellulose derivatives such as methylcellulose, hydroxyethyl cellulose, hydroxypropyl cellulose, hydroxypropyl methylcellulose, polyvinylpyrrolidone, polyvinylpyrrolidone/vinyl acetate copolymer and the like.

Disintegration agents such as corn starch, pregelatinized starch, cross-linked carboxymethylcellulose (AC-DI-SOL®), sodium starch glycolate (EXPLOTAB®), cross-linked polyvinylpyrrolidone (PLASDONE XL®), and any disintegration agents used in tablet preparations

Filling agents such as lactose, calcium carbonate, calcium phosphate, calcium sulfate, microcrystalline cellulose, dextran, starches, sucrose, xylitol, lactitol, mannitol, sorbitol, sodium chloride, polyethylene glycol, and the like.

Surfactants such as sodium lauryl sulfate, sorbitan monooleate, polyoxyethylene sorbitan monooleate, bile salts, glyceryl monostearate, PLURONIC® line (BASF), and the like.

Solubilizers such as citric acid, succinic acid, fumaric acid, malic acid, tartaric acid, maleic acid, glutaric acid sodium bicarbonate and sodium carbonate and the like.

Stabilizers such as any antioxidation agents, buffers, acids, and the like, can also be utilized.

Methods of manufacturing the core include

a. Extrusion-Spheronization—Drug(s) and other additives are granulated by addition of a binder solution. The wet mass is passed through an extruder equipped with a certain size screen. The extrudates are spheronized in a marumerizer. The resulting pellets are dried and sieved for further applications.

b. High-Shear Granulation—Drug(s) and other additives are dry-mixed and then the mixture is wetted by addition of a binder solution in a high shear-granulator/ mixer. The granules are kneaded after wetting by the combined actions of mixing and milling. The resulting granules or pellets are dried and sieved for further applications

c. Solution or Suspension Layering—A drug solution or dispersion with or without a binder is sprayed onto starting seeds with a certain particle size in a fluid bed processor or other suitable equipment. The drug thus is coated on the surface of the starting seeds. The drug-loaded pellets are dried for further applications.

For purposes of the present invention, the core particles have a diameter in the range of about 50–1500 microns; preferably 100–800 microns

These particles can then be coated in a fluidized bed apparatus with an alternating sequence of coating layers.

The core may be coated directly with a layer or layers of at least one pharmaceutically active amphetamine salts

8

and/or the pharmaceutically active amphetamine salt may be incorporated into the core material. Pharmaceutical active amphetamine salts contemplated to be within the scope of the present invention include amphetamine base, all chemical and chiral derivatives and salts thereof; methylphenidate, all chemical and chiral derivatives and salts thereof; phenylpropanolamine and its salts; and all other compounds indicated for the treatment of attention deficit hyperactivity disorder (ADHD).

A protective layer may be added on top of the pharmaceutical active containing layer and also may be provided between active layers. A separation or protective layer may be added onto the surface of the active-loaded core, and then the enteric layer is coated thereupon. Another active layer may also be added to the enteric layer to deliver an initial dose.

A protective coating layer may be applied immediately outside the core, either a drug-containing core or a drug-layered core, by conventional coating techniques such as pan coating or fluid bed coating using solutions of polymers in water or suitable organic solvents or by using aqueous polymer dispersions. Suitable materials for the protective layer include cellulose derivatives such as hydroxyethyl cellulose, hydroxypropyl cellulose, hydroxypropyl methylcellulose, polyvinylpyrrolidone, polyvinylpyrrolidone/vinyl acetate copolymer, ethyl cellulose aqueous dispersions (AQUACOAT®, SURELEASE®), EUDRAGIT® RL 30D, OPADRY® and the like. The suggested coating levels are from 1 to 6%, preferably 2–4% (w/w).

The enteric coating layer is applied onto the cores with or without seal coating by conventional coating techniques, such as pan coating or fluid bed coating using solutions of polymers in water or suitable organic solvents or by using aqueous polymer dispersions. All commercially available pH-sensitive polymers are included. The pharmaceutical active is not released in the acidic stomach environment of approximately below pH 4.5, but not limited to this value. The pharmaceutical active should become available when the pH-sensitive layer dissolves at the greater pH; after a certain delayed time; or after the unit passes through the stomach. The preferred delay time is in the range of two to six hours.

Enteric polymers include cellulose acetate phthalate, Cellulose acetate trimelliltate, hydroxypropyl methylcellulose phthalate, polyvinyl acetate phthalate, carboxymethylethylcellulose, co-polymerized methacrylic acid/methacrylic acid methyl esters such as, for instance, materials known under the trade name EUDRAGIT® L12.5, L100, or EUDRAGIT® S12.5, S100 or similar compounds used to obtain enteric coatings. Aqueous colloidal polymer dispersions or re-dispersions can be also applied, e.g. EUDRAGIT® L 30D-55, EUDRAGIT® L100-55, EUDRAGIT® S100, EUDRAGIT® preparation 4110D (Rohm Pharma); AQUATERIC®, AQUACOAT® CPD 30 (FMC); KOLLICOAT MAE® 30D and 30DP (BASF); EASTACRYL® 30D (Eastman Chemical).

The enteric polymers used in this invention can be modified by mixing with other known coating products that are not pH sensitive. Examples of such coating products include the neutral methacrylic acid esters with a small portion of trimethylammonioethyl methacrylate chloride, sold currently under the trade names EUDRAGIT® RS and EUDRAGIT® RL; a neutral ester dispersion without any functional groups, sold under the trade names EUDRAGIT® NE30D; and other pH independent coating products.

US 6,605,300 B1

9

The modifying component of the protective layer used over the enteric coating can include a water penetration barrier layer (semipermeable polymer) which can be successively coated after the enteric coating to reduce the water penetration rate through the enteric coating layer and thus increase the lag time of the drug release. Sustained-release coatings commonly known to one skilled in the art can be used for this purpose by conventional coating techniques such as pan coating or fluid bed coating using solutions of polymers in water or suitable organic solvents or by using aqueous polymer dispersions. For example, the following materials can be used, but not limited to: Cellulose acetate, Cellulose acetate butyrate, Cellulose acetate propionate, Ethyl cellulose, Fatty acids and their esters, Waxes, zein, and aqueous polymer dispersions such as EUDRAGIT® RS and RL 30D, EUDRAGIT® NE 30D, AQUACOAT®, SURELEASE®, cellulose acetate latex. The combination of above polymers and hydrophilic polymers such as Hydroxyethyl cellulose, Hydroxypropyl cellulose (KLUCEL®, Hercules Corp.), Hydroxypropyl methylcellulose (METHOCEL®, Dow Chemical Corp.), Polyvinylpyrrolidone can also be used.

An overcoating layer can further optionally be applied to the composition of the present invention. OPADRY®, OPADRY II® (Colorcon) and corresponding color and colorless grades from Colorcon can be used to protect the pellets from being tacky and provide colors to the product. The suggested levels of protective or color coating are from 1 to 6%, preferably 2–3% (w/w).

Many ingredients can be incorporated into the overcoating formula, for example to provide a quicker immediate release, such as plasticizers: acetyltriethyl citrate, triethyl citrate, acetyltributyl citrate; dibutylsebacate, triacetin, polyethylene glycols, propylene glycol and the others; lubricants: talc, colloidal silica dioxide, magnesium stearate, calcium stearate, titanium dioxide, magnesium silicate, and the like.

The composition, preferably in beadlet form, can be incorporated into hard gelatin capsules, either with additional excipients, or alone. Typical excipients to be added to a capsule formulation include, but are not limited to: fillers such as microcrystalline cellulose, soy polysaccharides, calcium phosphate dihydrate, calcium sulfate, lactose, sucrose, sorbitol, or any other inert filler. In addition, there can be flow aids such as fumed silicon dioxide, silica gel, magnesium stearate, calcium stearate or any other material imparting flow to powders. A lubricant can further be added if necessary by using polyethylene glycol, leucine, glyceryl behenate, magnesium stearate or calcium stearate.

The composition may also be incorporated into a tablet, in particular by incorporation into a tablet matrix, which rapidly disperses the particles after ingestion. In order to incorporate these particles into such a tablet, a filler/binder must be added to a table that can accept the particles, but will not allow their destruction during the tableting process. Materials that are suitable for this purpose include, but are not limited to, microcrystalline cellulose (AVICEL®), soy polysaccharide (EMCOSOY®), pre-gelatinized starches (STARCH® 1500, NATIONAL® 1551), and polyethylene glycols (CARBOWAX®). The materials should be present in the range of 5–75% (w/w), with a preferred range of 25–50% (w/w).

In addition, disintegrants are added in order to disperse the beads once the tablet is ingested. Suitable disintegrants include, but are not limited to: cross-linked sodium carboxymethyl cellulose (AC-DI-SOL®), sodium starch glycolate (EXPLOTAB®, PRIMOJEL®), and cross-linked

10

polyvinylpolypyrrolidone (Plasone-XL). These materials should be present in the rate of 3–15% (w/w), with a preferred range of 5–10% (w/w).

Lubricants are also added to assure proper tableting, and these can include, but are not limited to: magnesium stearate, calcium stearate, stearic acid, polyethylene glycol, leucine, glyceryl behanate, and hydrogenated vegetable oil. These lubricants should be present in amounts from 0.1–10% (w/w), with a preferred range of 0.3–3.0% (w/w).

Tablets are formed, for example, as follows. The particles are introduced into a blender along with AVICEL®, disintegrants and lubricant, mixed for a set number of minutes to provide a homogeneous blend which is then put in the hopper of a tablet press with which tablets are compressed. The compression force used is adequate to form a tablet; however, not sufficient to fracture the beads or coatings.

It will be appreciated that the multiple dosage form of the present invention can deliver rapid and complete dosages of pharmaceutically active amphetamine salts to achieve the desired levels of the drug in a recipient over the course of about 8 hours with a single oral administration.

In so doing, the levels of drug in blood plasma of the pharmaceutically active amphetamine salts will reach a peak fairly rapidly after about 2 hours, and after about 4 hours a second pulse dose is released, wherein a second fairly rapid additive increase of plasma drug levels occurs which slowly decreases over the course of the next 12 hours.

The following examples are presented to illustrate and do not limit the invention.

## EXAMPLES

### Example 1

#### Immediate Release Formulation

The following formulation was used to layer the drug onto sugar spheres. Nonpareil seeds (30/35 mesh, Paulaur Corp., NJ), 6.8 kg were put into a FLM-15 fluid bed processor with a 9" Wurster column and fluidized at 60° C. The suspension of mixed amphetamine salts (MAS) with 1% HPMC E5 Premium (Dow Chemical) as a binder was sprayed onto the seed under suitable conditions. Almost no agglomeration and no fines were observed with a yield of at least 98%. The drug-loaded cores were used to test enteric coatings and sustained release coatings.

TABLE 1

| Ingredients | Amount (%) |
| --- | --- |
| Nonpareil seed | 88.00 |
| mixed amphetamine salts | 11.40 |
| METHOCEL ® E5 Premium | 0.60 |
| Water | * |

*removed during processing

The drug release profile of the drug-loaded pellets of this example is shown in FIG. 3.

### Example 2

The following formulation was used to coat the mixed amphetamine salts loaded (MASL) pellets from Example 1 with the EUDRAGIT® L 30D-55 (Rohm Pharma, Germany) coating dispersion. 2 kg of MASL pellets were loaded into a fluid bed processor with a reduced Wurster column equipped with a precision coater (MP 2/3, Niro Inc.). The coating dispersion was prepared by dispersing Triethyl citrate, Talc and EUDRAGIT® L 30D-55 into water and

US 6,605,300 B1

11

mixing for at least 30 minutes. Under suitable fluidization conditions, the coating dispersion was sprayed onto the fluidized MASL pellets. The spraying was continued until the targeted coating level was achieved (20µ). The coated pellets were dried at 30–35° C. for 5 minutes before stopping the process. The enteric coated PPA pellets were tested at different pH buffers by a USP paddle method. The drug content was analyzed using HPLC. The results showed that the enteric coating delayed the drug release from the coated pellets until after exposure to pH 6 or higher (see Table 2 below) (Reference #AR98125-4)

TABLE 2

| Ingredients | Amount (%) |
|---|---|
| MASL pellets | 40.00 |
| EUDRAGIT ® L 30D-55 | 24.88 |
| Triethyl citrate | 2.52 |
| Talc | 2.60 |
| Water | * |

*removed during processing

The drug release profile of the coated pellets of this example is shown in FIG. 4.

Example 3

The following formulation was used to coat the MASL pellets from Example 1 with the EUDRAGIT® 4110D (Rohm Pharma, Germany) coating dispersion. MASL pellets (2 kg) were loaded in a fluid bed processor with a reduced Wurster column (GPGC-15, Glatt). The coating dispersion was prepared by dispersing Triethyl citrate, Talc and EUDRAGIT® 4110D into water and mixing for at least 30 minutes. Under suitable fluidization conditions, the coating dispersion was sprayed onto the fluidized MASL pellets. The spraying was continued until the targeted coating level was achieved. The coated pellets were dried at 30–35° C. for 5 minutes before stopping the process. The enteric coated MASL pellets were tested using a USP paddle method at different pH buffers. The drug content was analyzed using HPLC. The enteric coating delayed the drug release for several hours from the coated pellets until the pH value reached 6.8 or higher, as shown below in Table 3. (Reference #AR98125-3)

TABLE 3

| Ingredients | Amount (%) |
|---|---|
| MASL pellets | 70.00 |
| Eudragit ® 4110D | 26.24 |
| Triethyl citrate | 0.76 |
| Talc | 3.00 |
| Water | * |

*removed during processing

The drug release profile of coated pellets of this example is shown in FIG. 5.

Example 4

The following formulation was selected to coat the enteric coated MASL pellets. Coated MASL pellets from Example 2 or coated MASL pellets from Example 3 (2 kg of either) were loaded into a fluid bed processor with a reduced Wurster column (GPGC-15, Glatt). The coating dispersion was prepared by mixing SURELEASE® (Colorcon) and water for at least 15 minutes prior to spraying. Under suitable fluidization conditions, the coating dispersion was

12

sprayed onto the fluidized pellets. The spraying was continued until the targeted coating level was achieved. The coated pellets were coated with a thin layer of OPADRY® white (Colorcon) (2%) to prevent the tackiness of the coated pellets during storage. The coated pellets were then dried at 35–40° C. for 10 minutes before discharging from the bed. The drug dissolution from both coated pellets was performed using a USP paddle method at different pH buffers. The drug content was analyzed using HPLC. The 8% SURELEASE® coating slightly sustained the drug release from EUDRAGIT® L 30D-55 coated pellets at pH 7.5 buffer, while the SURELEASE® coating delayed the drug release up to 2 hours after the buffer switched from pH 1 to pH 7.5 (Reference ##AR98125-1)

TABLE 4

| Ingredients | Amount, (%) |
|---|---|
| Enteric coated MASL pellets | 90.00 |
| SURELEASE ® | 8.00 |
| OPADRY ® white | 2.00 |
| Water | * |

*removed during processing

The drug release profile of the coated pellets from this example is shown in FIG. 6.

Example 5

A pulsatile delivery system can be achieved by combining the immediate release pellets (Example 1) with delayed release pellets (Example 2 or Example 3). The immediate-release pellets equivalent to half the dose and the delayed-release pellets equivalent to half the dose are filled into a hard gelatin capsule to produce the oral pulsed dose delivery system. The delayed-release portion releases the amphet-amine salts rapidly and completely, after a specified lag time. The capsule products containing immediate-release pellets and delayed-release pellets (Example 1 plus Example 2 and Example 1 plus Example 3) were tested in a crossover human study. FIGS. 7 and 8 show the typical profiles of plasma amphetamine concentration after administration of a composite capsule containing the immediate-release pellets and delayed-release pellets from Examples 1 and 2 (10 mg dose each pellet type) and a capsule containing the pellets from immediate-release pellets and delayed-release pellets from Examples 1 and 3 (10 mg dose each pellet type), respectively. The general plasma profiles are similar to the desired target plasma level profile shown in FIG. 1.

It is to be understood, however, that the scope of the present invention is not to be limited to the specific embodiments described above. The invention may be practiced other than as particularly described and still be within the scope of the accompanying claims

CITED LITERATURE

1. B. Lemmer, "Circadian Rhythms and Drug Delivery", J. Controlled Release, 16, 63–74 (1991)
2. B. Lemmer, "Why are so many Biological Systems Periodic?" in Pulsatile Drug Delivery: Current Applications and Future Trends, R Gurny, H E Junginger and N A Peppas, eds. (Wissenschaftliche Verlagsgesellschaft mbH Stuttgart, Germany 1993) pp.11–24
3. X. Xu and P I Lee, "Programmable Drug Delivery from an Erodible Association Polymer System", Pharm. Res. 10(8), 1144–1152 (1993)
4. A. Gazzaniga, M E Sangalli, and F Giodano, "Oral Chronotropic Drug Delivery Systems: Achievement of

US 6,605,300 B1

13

Time and/or Site Specificity", *Eur J Pharm. Biopharm.*, 40(4), 246–250 (1994)

5. A Gazzaniga, C Busetti, L Moro, M E Sangalli and F Giordano, "Time Dependent Oral Delivery Systems for Colon Targeting", *S.T.P. Pharma Sciences* 5(1), 83–88 (1996)

6. U Conte, L Maggi, M L Torre, P Giunchedi and A Lamanna, "Press-coated Tablets for Time programmed Release of Drugs", *Biomaterials*, 14(13), 1017–1023 (1993)

7. A C Shah International Patent Application WO87/00044

8. P S Walia, P Jo Mayer Stout and R Turton, "Preliminary Evaluation of an Aqueous Wax Emulsion for Controlled Release Coating", *Pharm Dev Tech*, 3(1), 103–113 (1998)

9. F Theeuwes, "OROS® Osmotic System Development", *Drug Dev Ind Pharm* 9(7), 1331–1357 (1983)

10. F Theeuwes, "Triggered, Pulsed and Programmed Drug Delivery" in *Novel Drug Delivery and its Therapeutic Application*, L F Prescott and W S Nimmos, eds. (Wiley, New York, 1989) pp.323–340

11. M McNeil, A Rashid and H Stevens, International Patent App WO90/09168

12. I R Wilding, S S Davis, M Bakhshaee, H N E Stevens, R A Sparrow and J Brennan, "Gastrointestinal Transit and Systemic Absorption of Captopril from a Pulsed Release Formulation", Pharm Res 9(5), 654–657 (1992)

What is claimed is:

1. A pharmaceutical formulation for delivery of a mixture of amphetamine base salts effective to treat ADHD in a human patient comprising:

an immediate release dosage form that provides immediate release upon oral administration to said patient;

a delayed enteric release dosage form that provides delayed release upon oral administration to said patient; and

a pharmaceutically acceptable carrier;

wherein said amphetamine base salts comprise dextroamphetamine sulfate, dextroamphetamine saccharate, amphetamine aspartate monohydrate and amphetamine sulfate;

wherein said pharmaceutical formulation is sufficient to maintain an effective level of amphetamine base salts in the patient over the course of at least 8 hours without further administration of amphetamine base salt, and the peak plasma concentration of amphetamine base salts reached after release of said delayed enteric release dosage form exceeds the peak plasma concentration previously reached after release of said immediate release dosage form; and

wherein said pharmaceutical formulation, when containing about a total dose of 20 mg, will produce in a human individual a plasma concentration versus time curve (ng/ml versus hours) having an area under the curve (AUC) of about 467 to about 714 ng hr/ml.

2. A formulation of claim 1 wherein said plasma concentration curve has a maximum concentration ($C_{max}$) of about 22.5 to about 40 ng/ml for about a total dose of 20 mg.

3. A formulation of claim 2 wherein the time after said oral administration to reach said $C_{max}$ value is about 7 to about 10 hours.

4. A formulation of claim 1 wherein the time after said oral administration to reach maximum concentration of said plasma concentration curve is about 7 to about 10 hours

5. A formulation of claim 2, 3 or 4 wherein said AUC is about 714 ng hr/ml.

14

6. A formulation of claim 3 wherein said AUC is about 714 ng hr/ml, the time after said oral administration to reach said $C_{max}$ value is about 7 hours and $C_{max}$ is about 40 ng/ml.

7. A formulation of claim 2 wherein $C_{max}$ is about 40 ng/ml.

8. A formulation of claim 3 or 4 wherein said time is about 7 hours.

9. A formulation of one of claims 1–4, 6 or 7 wherein said salts are contained in about equal amounts within each of said dosage forms.

10. A formulation of one of claims 1–4, 6 or 7 wherein said delayed enteric release dosage form comprises a coating of a thickness of at least 20 μm which comprises dried about 30% (dry substance) aqueous dispersion of an anionic copolymer based on methacrylic acid and acrylic acid ethyl ester, said coating being soluble at a pH of about 5.5 upwards.

11. A formulation of claim 10 wherein said thickness is at least 25 μm.

12. A pharmaceutical formulation for delivery of a mixture of amphetamine base salts effective to treat ADHD in a human patient comprising:

an immediate release dosage form that provides immediate release upon oral administration to said patient;

a delayed enteric release dosage form that provides delayed release upon oral administration to said patient, wherein said enteric release dosage form comprises a coating of a thickness of at least 20 μm which comprises dried aqueous dispersion of an anionic copolymer based on methacrylic acid and acrylic acid ethyl ester, said coating being soluble at a pH of about 5.5 upwards; and

a pharmaceutically acceptable carrier;

wherein said amphetamine base salts comprise dextroamphetamine sulfate, dextroamphetamine saccharate, amphetamine aspartate monohydrate and amphetamine sulfate;

wherein said pharmaceutical formulation is sufficient to maintain an effective level of amphetamine base salts in the patient over the course of at least 8 hours without further administration of amphetamine base salt, and the peak plasma concentration of amphetamine base salts reached after release of said delayed enteric release dosage form exceeds the peak plasma concentration of said salts previously reached after release of said immediate release dosage form.

13. A formulation of claim 12 wherein said thickness is at least 25 μm.

14. A formulation of claim 12, wherein said dried aqueous dispersion of an anionic copolymer is a dried about 30% (dry substance) aqueous dispersion of an anionic copolymer.

15. A formulation of claim 1 formulated for a total dose of 20 mg.

16. A formulation of claim 2 formulated for a total dose of 20 mg.

17. A formulation of claim 1 formulated for a total dose different from about 20 mg and having an AUC proportional to said 20 mg AUC.

18. A formulation of claim 2 formulated for a total dose different from about 20 mg and having a $C_{max}$ proportional to said 20 mg $C_{max}$.

* * * * *

**Exhibit B**



**Sterne Kessler Goldstein Fox**
ATTORNEYS AT LAW

Robert Greene Sterne
Edward J. Kessler
Jorge A. Goldstein
David K.S. Cornwell
Robert W. Esmond
Tracy-Gene G. Durkin
Michele A. Cimbala
Michael B. Ray
Robert E. Sokohl
Eric K. Steffe
Michael Q. Lee
Steven B. Ludwig
John M. Covert
Linda E. Alcorn
Robert C. Millonig
Lawrence B. Bugaisky
Donald J. Featherstone
Michael V. Messinger

Judith U. Kim
Timothy J. Shea, Jr.
Patrick E. Garrett
Heidi L. Kraus
Edward W. Yee
Albert L. Ferro
Donald R. Banowit
Peter A. Jackman
Molly A. McCall
Teresa U. Medler
Jeffrey S. Weaver
Kendrick P. Patterson
Vincent L. Capuano
Albert L. Ferro II
Eldora Ellison Floyd
Thomas C. Fiala
Brian J. Del Buono
Virgil Lee Beaston

Kimberly N. Reddick
Theodore A. Wood
Elizabeth J. Haanes
Bruce E. Chalker
Joseph S. Ostroff
Frank R. Cottingham
Christine M. Unsler
Rae Lynn Prengaman
Jane Shershanovich
Lawrence J. Carroll
George S. Bartnesser
Daniel A. Klein
Rodney G. Maze
Jason D. Eisenberg
Michael A. Specht
Andrea J. Kamage
Tracy L. Muller
Jon E. Wright

LuAnne M. Yurick

Registered Patent Agents
Karen R. Markowicz
Nancy J. Leith
Ann E. Summerfield
Helene C. Carlson
Gaby L. Longsworth
Matthew J. Dowd
Aaron L. Schwartz
Angelique G. Uy
Mary B. Tung
Katrina Y. Pel
Bryan L. Skelton
Robert A. Schwartzman
John J. Figueroa
Timothy A. Doyle
Jennifer R. Mahalingappa

Teresa A. Colella
Jeffrey S. Lundgren
Victoria S. Rutherford

Of Counsel
Kenneth C. Bass III
Lisa A. Dunner
Evan R. Smith

Admitted only in Maryland
Admitted only in Virginia
Practice Limited to
Federal Agencies

August 15, 2003

Chief Executive Officer                                    *Certified Mail – Return Receipt*
**Shire Laboratories, Inc.**
1550 East Gude Drive
Rockville, MD 20850

> Re:    Notification Pursuant to § 505(j)(2)(B)(ii)
>        of the Federal Food, Drug and Cosmetic Act
>        (21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95)

Dear Madam or Sir:

We represent BARR LABORATORIES, INC. ("BARR") of Pomona, New York. We are writing on behalf of our client to provide notice of the following information to SHIRE LABORATORIES, INC. ("SHIRE"), the owner of U.S. Patent No. 6,605,300 according to the records of the U.S. Patent and Trademark Office, and the approval holder of New Drug Application ("NDA") No. 21-303 according to the records of the U.S. Food and Drug Administration ("FDA"):

I.

Pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95(c)(1), we advise you that the FDA has received an Abbreviated New Drug Application ("ANDA") from BARR containing bioavailability and/or bioequivalence data from studies on the amphetamine salt oral drug product that is the subject of NDA No. 21-303. The ANDA was submitted under § 505(j) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j)(1) and 2(A) with a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of an amphetamine salt product before the expiration of the above-mentioned patent, which is listed in *Approved Drug Products with Therapeutic Equivalence Evaluation* ("Orange Book").

II.

Pursuant to 21 C.F.R. § 314.95(c)(2), we advise you that the ANDA submitted by BARR has been assigned the number 76-536 by the FDA.

Chief Executive Officer,
SHIRE PHARMACEUTICALS, INC.
August 15, 2003
Page 2

III.

Pursuant to 21 C.F.R. § 314.95(c)(3), we advise you that the established name of the drug product that is the subject of BARR's ANDA is dextroamphetamine saccharate, amphetamine aspartate, dextroamphetamine sulfate and amphetamine sulfate extended-release capsules, 5 mg, 10 mg, 15 mg, 20 mg, 25 mg and 30 mg (mixed salts).

IV.

Pursuant to 21 C.F.R. § 314.95(c)(4), we advise you that the active ingredient in the proposed drug product is a mixture of four amphetamine salts: dextroamphetamine saccharate, amphetamine aspartate, dextroamphetamine sulfate and amphetamine sulfate; the strengths of the proposed drug products are 5 mg, 10 mg, 15 mg, 20 mg, 25 mg and 30 mg; and the dosage form of the proposed drug product is a capsule.

V.

Pursuant to 21 C.F.R. § 314.95(c)(5), we advise you that the patent alleged to be not infringed, invalid and/or unenforceable in the paragraph IV certification is U.S. Patent No. 6,605,300, which has a listed expiration date of October 21, 2018.

VI.

BARR alleges, and has certified to the FDA, that in BARR's opinion and to the best of its knowledge the above-listed patent is invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in BARR's ANDA. Therefore, pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95(c)(6), BARR's detailed statement of the legal and factual basis for the certification set forth in BARR's ANDA is attached hereto as an appendix and is made part hereof.

Very truly yours,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Robert C. Millonig

Andrea Jo Kamage

Enclosure

*Detailed Factual and Legal Basis for BARR's Paragraph IV Certification*

## I.    Introduction

This document is the detailed factual and legal basis for the assertion of BARR LABORATORIES, INC. ("BARR") that, in its opinion and to the best of its knowledge, U.S. Patent No. 6,605,300 is invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, sale and/or offer for sale of the drug product described in BARR's ANDA. The right to raise additional defenses is specifically reserved.

## II.    Background Information

### A.    ADDERALL XR®

The active ingredients in the drug product ADDERALL XR® are dextroamphetamine sulfate, dextroamphetamine saccharate, amphetamine sulfate and amphetamine aspartate. ADDERALL XR® is approved for the treatment of Attention Deficit Hyperactivity Disorder ("ADHD"). It is supplied as a capsule for oral administration containing 5, 10, 15, 20, 25 or 30 mg of the amphetamine salt mixture, together with various inactive ingredients.

### B.    The ANDA Formulation

The product that is the subject of BARR's ANDA ("BARR's ANDA product") is a capsule containing 5, 10, 15, 20, 25 or 30 mg amphetamine salts. Each capsule contains two different types of pellets: immediate release and enteric release. BARR's product also includes various inactive ingredients.

## III.    Factual and Legal Basis for BARR's Assertion

As discussed below, claims 1-18 of U.S. Patent No. 6,605,300 ("the '300 patent") are obvious over the prior art, and are therefore invalid for failing to meet the requirements of 35 U.S.C. § 103(a).

### A.    Discussion of Prior Art

#### 1.    Immediate-Release Mixed Amphetamine Salt Formulations for the Treatment of ADHD

Immediate-release ADDERALL® was approved in 1996 for the treatment of ADHD. Each of the individual amphetamine salts and the specific four-salt combination present in ADDERALL® has been known for at least 25 years. The labeling for ADDERALL® includes instructions for twice-daily dosing. Both ADDERALL® and its labeling qualify as prior art under one or more subsections of 35 U.S.C. § 102.

-1-

Sterne, Kessler, Goldstein & Fox P.L.L.C.  :  1100 New York Avenue, NW  :  Washington, DC 20005  :  202.371.2600 f 202.371.2540 : www.skgf.com

*Detailed Factual and Legal Basis for BARR's Paragraph IV Certification*

### 2. U.S. Patent No. 5,837,284 ("Mehta et al.")

U.S. Patent No. 5,837,284 ("Mehta *et al.*"), issued November 17, 1998 from U.S. Appl. No. 08/892,190, filed July 14, 1997, and claims priority to a chain of applications, the first of which was filed on December 4, 1995. Mehta *et al.* qualifies as prior art under one or more subsections of 35 U.S.C. § 102.

Mehta *et al.* is directed to a dosage form for the oral administration of methylphenidate for the treatment of ADHD. This reference describes an amphetamine dosage form for treating ADHD having a first immediate-release dose of amphetamine and a second delayed enteric release dose of amphetamine. In particular, Mehta *et al.* describes a dosage form which, upon administration, achieves a plasma concentration of amphetamine after release from the delayed enteric dosage form that is higher than the plasma concentration achieved by the amphetamine released from the immediate-release dosage form. Mehta *et al.* also describes a dosage form which achieves an effective plasma concentration of amphetamine for at least 8 hours.

For example, Mehta *et al.* includes the following disclosure:

> In the embodiment represented by **FIG. 2**, the levels of drug released at the maxima are nearly equal.

> \*          \*          \*

> However, embodiments in which the maxima of the two releases differ by more than 40 percent are within the scope of the invention. The appropriate relative amounts of drug in each release can be readily determined by one skilled in the art.

> \*          \*          \*

> However, as will be apparent to one skilled in the art, the effect of drug metabolism in the body may require adjustment of the relative amounts of each dose, so that, for example, the second dose may have to be adjusted to provide more of the drug than the first dose, to compensate for any competition between drug release and drug metabolism.

*See Mehta et al. at col. 5, ll. 49-51; col. 5, ll. 61-65; and col. 6, ll. 55-61.*

Mehta *et al.* describes enteric release coatings of anionic copolymers based on methacrylic acid and acrylic acid ethyl ester having a thickness of at least 20 μm, and at least 25 μm, being

-2-

*Detailed Factual and Legal Basis for BARR's Paragraph IV Certification*

soluble at a pH of about 5.5 upwards. *See, e.g., col. 7, l. 12 - col. 8, l. 57.* Mehta *et al.* also describes a dried aqueous dispersion of methacrylic acid, acrylic acid ethyl ester copolymer coatings. *See, e.g., col. 13, ll. 14-29.*

Mehta *et al.* describes the use of such a dosage form to provide effective *in-vivo* plasma levels of an amphetamine to treat ADHD, by providing a single dosage unit capable of achieving similar *in-vivo* doses to those achieved by separate immediate-release amphetamine dosages.

> The present invention relates to improved dosing of medications. In particular, the present invention relates to improved dosing of a medication whereby two or more effective, time-separated doses may be provided by administration of a single dosage unit. . . . Based on predictable in vitro release times, the dosage forms can be formulated to deliver delayed doses in vivo at desired times.

*Mehta et al. at col. 1, ll. 13-20.*

Mehta *et al.* also describes that the administration of the disclosed dosage form, an immediate dose followed by a delayed second dose, provides a more effective peak plasma concentration of amphetamine and is an improvement over sustained release formulations.

> Sustained release formulations of dl-threo methylphenidate have been developed, which provide for slow release of the drug over the course of the day. However, it has been observed that peak plasma concentrations of the drug are lower when sustained release formulations are used. In some studies, sustained release formulations of methylphenidate have been shown to have lower efficacy than conventional dosage forms.
>
> There remains a need for methods for delivering methylphenidate with maximum effectiveness and minimal potential for abuse. Furthermore, it has been determined that there is a need for a dosage form which provides, in one administration, an initial release followed, at a predictable delay, by a second release, of maximally effective methylphenidate. This will eliminate the risk of theft or loss of the second dose, while minimizing undesirable side effects and maximizing ease of administration. The present invention is directed to these, as well as other, important ends.

*Mehta et al. at col. 2, ll. 42-59.*

-3-

Sterne, Kessler, Goldstein & Fox P.L.L.C. : 1100 New York Avenue, NW ; Washington, DC 20005 : 202.371.2600 f 202.371.2540 : www.skgf.com

*Detailed Factual and Legal Basis for BARR's Paragraph IV Certification*

**B.     The Claims of the '300 Patent are Invalid as Obvious in View of the Prior Art**

Mehta *et al.* describes each and every limitation of claims 1-18 of the '300 patent, except the specific mixture of amphetamine salts and the corresponding plasma concentrations, $C_{max}$, and AUC's obtained by administration of separate immediate-release doses of the amphetamine salt mixture.

Based at least in part on the specific teaching in Mehta *et al.* for achieving peak plasma concentrations corresponding to separate immediate-release amphetamine dosing, one of ordinary skill in the art would have been motivated to replace the methylphenidate described in Mehta *et al.* with the previously-approved ADDERALL® amphetamine salt mixture, and would have had a reasonable expectation of success in achieving the desired plasma concentrations and AUC's recited in claims 1-11 and 15-18 of the '300 patent. The "mixture of amphetamine base salts" limitation of claims 12-14 is also met by the obvious substitution of the ADDERALL® amphetamine salt mixture for the methylphenidate described in Mehta *et al.* This reference also describes each of the other limitations recited by these claims.

-4-

Sterne, Kessler, Goldstein & Fox P.L.L.C.  :  1100 New York Avenue, NW  :  Washington, DC 20005  :  202.371.2600  F 202.371.2540  :  www.skgf.com



PLACE STICKER AT TOP OF ENVELOPE
TO THE RIGHT OF RETURN ADDRESS.
FOLD AT DOTTED LINE

**CERTIFIED MAIL**

U.S. POSTAGE
PAID
WASHINGTON,DC
2001?
AUG 14 '03
AMOUNT
$4.65
00068144-34

7000 0520 0020 9133 5373

# FIRST CLASS MAIL

Sterne, Kessler, Goldstein & Fox P.L.L.C.
Attorneys At Law
1100 New York Avenue, N.W.
Washington, DC 20005-3934

TO:

Chief Executive Officer
**Shire Laboratories, Inc.**
1550 East Gude Drive
Rockville, MD 20850

RETURN RECEIPT
REQUESTED

RETURN RECEIPT
REQUESTED

**SENDER:**
☐ Complete items 1 and/or 2 for additional services.
☐ Complete items 3, 4a, and 4b.
☐ Print your name and address on the reverse of this form so that we can return this card to you.
☐ Attach this form to the front of the mailpiece, or on the back if space does not permit.
☐ Write "Return Receipt Requested" on the mailpiece below the article number.
☐ The Return Receipt will show to whom the article was delivered and the date delivered.

3. Article Addressed to:
Chief Executive Officer
SHIRE LABORATORIES, INC.
1550 East Gude Drive
Rockville, MD 20850

4a. Article Number
7000 0520 0020 9133 5373

4b. Service Type
☐ Registered        ☒ Certified
☐ Express Mail      ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery
18 - Aug . 03

5. Received By: (Print Name)
RICHARD A. Couch

6. Signature: (Addressee or Agent)

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

8. Addressee's Address (Only if requested and fee is paid)

Thank you for using Return Receipt Service.

PS Form 3811, December 1994        Domestic Return Receipt        102595-99-M-0223

Is your RETURN ADDRESS completed on the reverse side?

United States Postal Service
**Sorry We Missed You! We'll Deliver for You**

Today's Date 8/18    Sender's Name

Item is at:
____ Post Office (See back)

Available for Pick-up After

Date:    Time:

We will redeliver or
you or your agent can
pick up. See reverse.

☐ If checked, you or your agent must be present at time of delivery to sign for item

**For Delivery:** (Enter total number of items delivered by service type)
**For Notice Left:** (Check applicable item)

Letter
Large envelope, magazine, catalog, etc.
Parcel
Restricted Delivery
Perishable Item
Other:

Article Number(s)

70050520000209733513

____ Express Mail (We will attempt to deliver on the next delivery day unless you instruct the post office to hold it.)
____ Registered
____ Insured
✗ Certified
____ Recorded Delivery
____ Firm Bill

Return Receipt for Merchandise
Delivery Confirmation
Signature Confirmation

**Notice Left Section**
Customer Name and Address    SHIRE

Article Requiring Payment    Amount Due
☐ Postage Due  ☐ COD  ☐ Customs    $

Delivered By and Date

☐ **Final Notice:** Article will be returned to sender on

Delivery Notice/Reminder/Receipt

PS Form **3849,** November 1999

We will redeliver OR you or your agent can pick up your mail at the post office. *(Bring this form and proper ID. If your agent will pick up, sign below in item 2, and enter agent's name here):*

| 1. | a. *Check all that apply in section 3;* b. *Sign in section 2 below;* c. *Leave this notice where the carrier can see it.* | ROCKVILLE MAIN POST OFFICE - 20850 500 N WASHINGTON ST 8:30 AM - 6:00 PM  M - F 8:30 AM - 4:00 PM  SAT PHONE:800-ASK-USPS (800-275-8777 | |
|---|---|---|---|
| 2. *Sign Here to Authorize Redelivery or to Authorize an Agent to Sign for You:* | | **Delivery Section** | |
| 3. ☐ Redeliver *(Enter day of week ):* | Signature X | *Richard A. Couch* 18 Aug '03 | |
| *(Allow at least two delivery days for redelivery, or call your post office to arrange delivery.)* | Printed Name | RICHARD A. COUCH | |
| ☐ **Leave item at my address** | Delivery Address | 1550 E. Ende Dr | |
| *(Specify where to leave. Example: "porch", "side door". This option is not available if box is checked on the front requiring your signature at time of delivery.)* ☐ Refused | | **USPS** | |

PS Form **3849,** November 1999 *(Reverse)*

5293 0024 0526 8330