## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IMPAX LABORATORIES, INC.,

                Plaintiff,

      v.

SHIRE LABORATORIES INC.,

                Defendant.

Civil Action No.:  05-CV-772 GMS

## PLAINTIFF IMPAX LABORATORIES, INC.'S MEMORANDUM IN OPPOSITION TO SHIRE LABORATORIES INC.'S MOTION TO DISMISS AND/OR TRANSFER

OF COUNSEL
Philip J. McCabe
KENYON & KENYON LLP
333 West San Carlos Street
Suite 600
San Jose, CA  95110
(408) 975-7500

C. Kyle Musgrove
Robert F. Vroom
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, D.C.  20005
(202) 220-4200

Michael A. Siem
KENYON & KENYON LLP
One Broadway
New York, NY  10004
(212) 425-7200

January 9, 2006

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for Plaintiff*
*Impax Laboratories, Inc.*

# TABLE OF CONTENTS

**Page**

NATURE OF THE MATTER BEFORE THE COURT ....................................................1

SUMMARY OF THE ARGUMENT....................................................................2

STATEMENT OF FACTS ....................................................................4

ARGUMENT ....................................................................5

    I.     Impax's Declaratory Judgment Action Should Not be Dismissed ..............5

    II.    Exceptions to the "First-Filed" Rule Are Present in This Case ...................6

          A.    Judicial Efficiency and the Interests of Justice Favor Denying Shire's Motion........................................................7

          B.    Shire's Assertions of Inefficiency Lack Significance......................8

          C.    The Ability to Compel Attendance of Unwilling Witnesses Favors Denying Shire's Motion........................................................9

          D.    The Convenience of the Parties Favors Denying Shire's Motion........................................................10

          E.    Shire's Choice of the S.D.N.Y. Forum Is Not Significant.............10

          F.    The Convenience of Witnesses Does Not Favor Transferring This Action........................................................10

          G.    Other Neutral Factors ......................................................11

CONCLUSION ....................................................................12

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bayer Bioscience N.V. v. Monsanto Co.*,
C.A. No. 03-023 GMS, 2003 U.S. Dist. Lexis 4594,
(D. Del. March 25, 2003) ...........................................................................................6, 8

*Burstein v. Applied Extrusion Technologies*,
829 F. Supp. 106 (D. Del. 1992) ...............................................................................10

*Jumara v. State Farm Insurance Co.*,
55 F.3d 873 (3d Cir. 1995)............................................................................................7

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988). .......................................................................................................6

**Statutes**

28 U.S.C. 1404(a) ........................................................................................................7

This matter is before the Court upon Defendant Shire Laboratories Inc.'s ("Shire") motion to dismiss and/or transfer this action to the U.S. District Court for the Southern District of New York (the "S.D.N.Y.").

## NATURE OF THE MATTER BEFORE THE COURT

This is a declaratory judgment action in which Plaintiff Impax Laboratories, Inc. ("Impax") seeks a declaration that the proposed product embodied in Impax's Abbreviated New Drug Application No. 76-852 ("Impax's ANDA") does not infringe Shire Laboratories Inc.'s ("Shire") U.S. Patent No. 6,913,768 ("the '768 patent") and that the '768 patent is invalid.

Shire has filed a similar declaratory judgment action in the S.D.N.Y., in which it alleges that Impax's ANDA product will infringe the '768 patent upon its commercial manufacture.[1] Shire also seeks a declaration of willful infringement.

Impax's declaratory judgment action was filed on November 9, 2005, and Shire's declaratory judgment action was filed on October 19, 2005. On December 22, 2005, Shire, in its present motion to dismiss and/or transfer, asserts that its S.D.N.Y. action was the "first-filed" and, essentially, that the two actions are mirror images. Based on these assertions, Shire argues that Impax's action should be dismissed and/or transferred because of the first-filed doctrine and that Impax "cannot demonstrate that there are any special circumstances" that allows for varying from the first filed doctrine. On January 6, 2006, Impax answered Shire's S.D.N.Y. complaint and filed contemporaneously therewith a

---

[1]     In that action, Shire also alleges that Barr Laboratories, Inc.'s ("Barr") own ANDA product will infringe the '768 patent. On December 19, 2005, Barr filed a motion to dismiss Shire's Complaint.

motion to transfer that action to the District of Delaware. (Attached as Ex. 1.) [2] If that case is transferred to this District, Impax expects that it will be consolidated with the present action.

Shire's assertion that there are no special circumstances in this case ignores the litigations presently before this Court wherein Shire sued Impax alleging that Impax's same ANDA infringed two earlier issued patents. As described below, there are clearly circumstances present here that warrant denial of Shire's motion.

## SUMMARY OF THE ARGUMENT

1. There are special circumstances present in this case which allow this Court to retain jurisdiction and deny Shire's present motion. Impax's assertion of special circumstances is premised upon the fact that Shire has twice sued Impax in this Court. Those suits concern Impax's proposed ANDA product allegedly infringing Shire's U.S. Patent Nos. 6,322,819 and 6,605,300 (respectively, the "'819 patent" and "'300 patent"). Both of those earlier litigations were filed by Shire in the District of Delaware and were consolidated under Civil Action No. 03-1164 (GMS) and are currently pending before this Court. Impax's ANDA at issue in those earlier litigations is the same ANDA at issue in the present action.

2. Assuming that Impax's and Shire's declaratory judgment actions are mirror image cases, this Court provides the best forum in which to resolve the present action for several reasons. While there is not a complete overlap between the present action and the earlier consolidated actions before this Court, half of the puzzle is the same: Impax's

---

[2] Exhibits to this brief have been assigned numeric identifiers.

ANDA. This Court's familiarity with that ANDA and its underlying technology is a significant factor which favors denying Shire's motion. That earlier suit filed by Shire has been pending before this Court for over two years. Based upon this Court's earlier *Markman* determination in that case, this Court allowed Impax to file a motion for summary judgment of noninfringement – which motion relies upon the same ANDA that is at issue in the present case. Thus, judicial economy strongly favors this Court denying Shire's motion to dismiss and/or transfer.

   3. There are several other reasons why Shire's assertion that Impax "cannot demonstrate that there are any special circumstances" is simply incorrect and that its motion should be denied. Shire filed suit against Impax in the Southern District of New York. The S.D.N.Y. is not the home of either Shire or Impax, but the District of Delaware *is* both Shire's and Impax's place of incorporation. Furthermore, at present, it does not appear that *any* witnesses for either Shire or Impax reside in New York. Not only are there no apparent witnesses in New York, there do not appear to be any operative facts which occurred in New York. Moreover, at least one of the named inventors of the '768 patent is outside of the S.D.N.Y.'s subpoena power, but appears to be within the District of Delaware's subpoena power.

   4. Shire's assertions that judicial economy will be served best by having a single action against both Barr and Impax are not well founded. Shire ignores the loss in judicial economy that would occur if this Court's accrued knowledge is not used in the new action. Furthermore, Shire's assertions regarding judicial economy ring hollow in view of its actions. Shire's assertions might carry more weight if it had filed suit in the S.D.N.Y. *and* informed that Court about the pending *Shire v. Barr* matters before Judge Castel – but it

did not.  Specifically, Shire did not file a notice of relatedness to the previous Barr matters when it filed its consolidated S.D.N.Y. declaratory judgment action;[3] as a result of this, Shire's declaratory judgment action is presently assigned to yet a third Judge.  Shire's assertions of conserving judicial resources are not realized by having a Court other than this one preside over the present action.

## STATEMENT OF FACTS

Shire is a pharmaceutical company that is incorporated in Delaware and has its principal place of business in Maryland.  (*See* Ex. C to D.I. 1.)  Shire has not asserted any connections with New York (*see id.*), and Shire's website does not indicate that it has any offices in New York. (Ex. 3.)

Impax is a technology-based specialty pharmaceutical company and is incorporated in Delaware.  Impax is headquartered in California and has its primary commercial center in Philadelphia, Pennsylvania.  (Ex. 4.)  All of the research and development of the formulation for the proposed products reflected in Impax's ANDA occurred in California.

The '768 patent is entitled "Sustained Release Delivery of Amphetamine Salts." The named inventors are Richard Couch, Beth Burnside and Rong-Kun Chang and their residences are given as Bryn Mawr, PA, Bethesda, MD and Rockville, MD, respectively. (*See* Ex. A to D.I. 1.)  These three individuals are also listed as inventors on the patents in suit from the earlier filed and currently pending litigations before this Court.  Of the three named inventors, at least Beth Burnside is no longer employed by Shire.  Dr. Burnside is

---

[3]      On December 19, 2005, along with its motion to dismiss, Barr filed an Application for Determination of Relatedness to Prior Actions, specifying Civil Action Nos. 03-1219 (PKC) and 03-6632 (PKC).  (Attached as Ex. 2.)

currently the Vice President, Pharmaceutical Research, for Advancis Pharmaceutical Corp. ("Advancis"). (Ex. 5.) Advancis is located in Germantown, Maryland. (Ex. 6.) Bethesda and Germantown are more than 100 miles from the S.D.N.Y., but they are not more than 100 miles from the District of Delaware. (Ex. 7.)

Impax's ANDA No. 76-852 is the basis for both the present action and the two earlier actions brought by Shire in the District of Delaware. (Exs. 8 and 9.) In those actions, Shire alleged that the same ANDA infringed two other patents: U.S. Patent Nos. 6,322,819 and 6,605,300. (*See id.*) Both of those actions, which have been consolidated, were filed by Shire in the District of Delaware and are currently pending before this Court. Briefing for summary judgment of noninfringement was completed on October 18, 2005. (*See* D.I. 219, in 03-cv-1164 (GMS).) Trial is scheduled for February 23, 2006.

## ARGUMENT

### I.    Impax's Declaratory Judgment Action Should Not be Dismissed

Shire's motion to dismiss this action should be denied. Shire is correct that there is a pending action in the S.D.N.Y. in which Shire seeks a declaration that Impax's ANDA product will infringe the '768 patent. Impax, however, has filed a motion requesting that the S.D.N.Y. transfer the Impax portion of that case to this Court. Impax is not seeking to be heard in two different courts – Impax only seeks the judicial economy that is generated by having this Court preside over the new allegations concerning the '768 patent and Impax's ANDA product.

The proper course of action should be for Impax's present declaratory judgment action and Shire's S.D.N.Y. declaratory judgment action to be consolidated before the same Court. For the reasons set forth below, Impax believes that the exceptional

circumstance of judicial efficiency indicates that the Impax portion of the S.D.N.Y. action should be transferred to, and consolidated with this present action in, Delaware. Such a course would allow these cases to proceed in the most efficient forum: the District of Delaware.[4]

## II.    Exceptions to the "First-Filed" Rule Are Present in This Case

As Shire noted in its brief, this Court has recognized that "the Federal Circuit requires that the first-filed action be given preference absent special circumstances." (Shire Br. at 6, *citing Corixa Corp. v. Idec Pharms. Corp.*, C.A. No. 01-615 GMS, 2002 U.S. Dist. LEXIS 2980, at *3-4 (D. Del. Feb. 25, 2002). However, this Court has also noted that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served." *Bayer Bioscience N.V. v. Monsanto Co.*, C.A. No. 03-023 GMS, 2003 U.S. Dist. LEXIS 4594, at *3, (D. Del. March 25, 2003) (*citing Genentech v Eli Lilly & Co.*, 998 F.2d 931, 937-938 (Fed. Cir. 1993)). (Attached as Ex. 10.)

District courts have discretion adjudicating motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). When considering a motion to transfer, this Court determines "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Bayer* at *4 (*quoting Genentech* at 937-38) That inquiry involves not only the statutory criteria of convenience of the parties and the

---

[4]     It should be noted that resolution of Impax's motion to transfer the S.D.N.Y. action, in Impax's favor, should render Shire's motion moot.

witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Particularly in view of the earlier and currently pending litigations involving the same ANDA, this Court is the proper forum for the new issues concerning the '768 patent and Impax's ANDA. As in *Bayer*, this Court should analyze the Section 1404(a) factors and conclude that the first-filed rule is inapplicable.

### A.     Judicial Efficiency and the Interests of Justice Favor Denying Shire's Motion

The interest of justice strongly favors denying Shire's motion. If this action is transferred to the S.D.N.Y., judicial efficiency would be lost as this Court's familiarity with Impax's ANDA, the technologies underlying the ANDA, the parties and the previously conducted discovery, would be lost. By denying Shire's motion and using this Court's familiarity, the interests of judicial economy would best be served.

As with Impax, Shire has similarly sued Barr twice alleging that Barr's ANDA for a generic Adderall XR® infringed the same two earlier issued patents provided above. In those two suits, Shire filed against Barr in the S.D.N.Y. – Barr's home forum. Those cases are currently pending before Judge Castel.

When Shire filed its declaratory judgment complaint in the S.D.N.Y. against Barr and Impax, Shire did not indicate that its case was related to any other cases. As such, the S.D.N.Y. action has been assigned to Judge Owen. Shire's present assertions that judicial economy favors the present suit being tried in the S.D.N.Y. (against Barr and Impax together) are not supported by its actions. Although, in some cases, judicial economy might be increased in a single case against two defendants instead of two cases in different districts – that is not the case here, especially when the single case is assigned to a third

judge with no existing knowledge of the allegations, technologies or the parties.

However, even if Shire's S.D.N.Y. action had been brought before Judge Castel, judicial efficiency, in this instance, would not be promoted: a single case against Barr and Impax is limited in the amount that efficiency could be increased because Impax's and Barr's ANDAs propose different formulations and raise different questions related to infringement. Instead, having each case tried separately and before the Judges that already have developed a relevant knowledge base would promote greater judicial economy.

By having this Court preside over the new issues raised in the declaratory judgment actions, this case should be able to reach trial with less judicial resources than if tried together with Barr in the S.D.N.Y. This ease and increased speed are among the relevant public interests considered by this Court. *See Bayer* at *5 ("practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion" *quoting Jumara* at 879-80).

Judicial economy and the interests of justice strongly favor denying Shire's motion because the efficiencies of the Court – and the parties – are increased by litigating this action before this Court.

### B.  Shire's Assertions of Inefficiency Lack Significance

Shire's assertions concerning the efficiency of a single trial against Barr and Impax lack merit. Shire asserts that it "will be inconvenienced if the inventors and related Shire individuals have to be deposed multiple times in two different proceedings" and "[l]ikewise, producing the same documents a second time is equally inefficient." (*Shire* Br. at 13.) These assertions lack significance in view of the parties' earlier actions.

Impax and Shire reached agreement in the earlier District of Delaware actions that

- 8 -

allowed Impax to use the depositions from the earlier *Shire v. Barr* litigations as if they had been conducted by Impax. (*See* D.I. 108 from 03-cv-1164 (GMS)). It is likely that a similar agreement could be reached between the parties as to the present dispute.[5]

Shire's concern about producing the same documents a second time is also not well founded. Irrespective of a single suit against Barr and Impax or two separate suits, Shire will still need to produce two sets of documents: one set for Barr and one set for Impax.

Shire's assertions that two separate suits will produce inefficiencies as to the parties are not supported by the facts or the parties' past actions.

### C.    The Ability to Compel Attendance of Unwilling Witnesses Favors Denying Shire's Motion

Shire seeks to have this action dismissed and/or transferred to the S.D.N.Y. The S.D.N.Y. is not best situated to deal with the present action, *e.g.*, that Court lacks the subpoena power to compel the attendance of at least one of the three named inventors of the '768 patent: Beth Burnside. Dr. Burnside is no longer employed by Shire. Dr. Burnside reportedly resides and works in Maryland and is outside of the S.D.N.Y.'s subpoena power. However, Dr. Burnside appears to be within the District of Delaware's subpoena power. As Dr. Burnside is likely one of the three most important witnesses relating to the '768 patent, this Court's ability to compel her attendance strongly favors denying Shire's motion: Shire seeks to remove this action from a Court which appears to be able to compel testimony, to a Court that clearly cannot. Similarly, if needed, this Court may have the power to compel the attendance of any other potential witnesses that no

---

[5]    Even in a consolidated case there may be issues relating to co-parties examining the same witness. As such, the inefficiencies asserted by Shire could occur even if there was only a single action against Barr and Impax.

longer work for Shire but still reside in Maryland, while the S.D.N.Y. cannot.

**D.    The Convenience of the Parties Favors Denying Shire's Motion**

The S.D.N.Y. is not Shire's home forum or Impax's; the District of Delaware is both Shire's and Impax's home forum as they are both incorporated here. Shire filed its declaratory judgment action against Impax outside both of their home forum and now, through its present motion, is trying to flee from Impax's declaratory judgment action filed in both Shire's and Impax's home forum.

In sum, this factor favors denying Shire's motion, since the District of Delaware is closer to Shire's headquarters in Maryland, and the District of Delaware is clearly the more appropriate forum, since both Shire and Impax have chosen Delaware as their home forum.

**E.    Shire's Choice of the S.D.N.Y. Forum Is Not Significant**

Shire's choice of forum in its S.D.N.Y. declaratory judgment action is not entitled to significance because Shire did not sue in its home forum. Shire does not have a place of business in New York, nor did it identify any of its own activities that were specific to New York in its complaint. (*See* Ex. C to D.I. 1.) None of Impax's activities alleged by Shire in its complaint occurred in New York. (*Id.*) This minimizes the weight to be given Shire's choice of forum. (*See Burstein v. Applied Extrusion Technologies,* 829 F. Supp. 106, 110 (D. Del. 1992).)

**F.    The Convenience of Witnesses Does Not Favor Transferring This Action**

Most, if not all, of Impax's fact witnesses regarding the research and development embodied in its ANDA are located in Northern California. Shire is incorporated in Delaware and is headquartered in Maryland. Presumably, any research and development

underlying the '768 patent occurred in Maryland. Maryland is closer to the District of Delaware than it is to the S.D.N.Y. and, therefore, should not be more inconvenient for Shire's witnesses. Furthermore, Impax is not aware of any potential witnesses for Shire or Impax located in New York. There do not appear to be any witnesses that would be inconvenienced more by being required to travel to Shire's and Impax's home forum (Delaware), instead of New York.

### G.    Other Neutral Factors

In the present case, none of the remaining factors appear to suggest that this action should be transferred to the S.D.N.Y. The following factors either slightly support denying Shire's motion or at least do not support transferring this action to the S.D.N.Y.: the locus of operative facts (Maryland and California appear to be the primary loci concerned); the relative ease of access to sources of proof (same, except potentially for the extensive discovery already conducted in the earlier District of Delaware actions); the relative means of the parties; and the forum's familiarity with the governing law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion

be denied *in toto*.

January 9, 2006

By: _____

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for Plaintiff*
*Impax Laboratories, Inc.*

Philip J. McCabe
KENYON & KENYON LLP
333 West San Carlos Street
Suite 600
San Jose, CA  95110
(408) 975-7500

C. Kyle Musgrove
Robert F. Vroom
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, D.C.  20005
(202) 220-4200

Michael A. Siem
KENYON & KENYON LLP
One Broadway
New York, NY  10004
(212) 425-7200

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2006, I electronically filed the foregoing document, **PLAINTIFF IMPAX LABORATORIES, INC.'S MEMORANDUM IN OPPOSITION TO SHIRE LABORATORIES INC.'S MOTION TO DISMISS AND/OR TRANSFER**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19801


Additionally, I hereby certify that on the 9th day of January, 2006, the foregoing document was served via email on the following non-registered participants:

Sandra Kuzmich, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151

Mary B. Matterer (#2696)
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

*Attorneys for Defendant*
*Impax Laboratories, Inc.*

# EXHIBIT   1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIRE LABORATORIES INC.,<br><br>                              Plaintiff,<br><br>                    v.<br><br>BARR LABORATORIES, INC.,<br><br>and<br><br>IMPAX LABORATORIES, INC.,<br><br>                              Defendants. | Civil Action No. 05-8903 (RO) |

**DEFENDANT IMPAX LABORATORIES, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION
TO SEVER AND TRANSFER UNDER 28 U.S.C. § 1404(a)**

This matter is before the Court upon Defendant Impax Laboratories, Inc.'s ("Impax")

motion to sever and transfer this action to the U.S. District Court for the District of Delaware

under 28 U.S.C. § 1404(a).

**NATURE OF THE MATTER BEFORE THE COURT**

This is a declaratory judgment action in which plaintiff Shire Laboratories Inc. ("Shire")

has alleged that the proposed product embodied in Impax's Abbreviated New Drug Application

No. 76-852 ("Impax's ANDA") will infringe Shire's U.S. Patent No. 6,913,768 ("the '768

patent") upon its commercial manufacture, sale, offer to sale, use or importation.

Impax's present motion does not merely assert that there is a more convenient forum –

which there is.  Impax also seeks to transfer this case because Shire has twice sued Impax in the

District of Delaware alleging that Impax's same ANDA involved in this suit infringed two of

Shire's earlier issued patents. Those suits concern Impax's proposed ANDA product allegedly infringing Shire's U.S. Patent Nos. 6,322,819 and 6,605,300 (respectively, the "'819 patent" and "'300 patent"). Both of those earlier litigations were filed by Shire in the District of Delaware and were consolidated under Civil Action No. 03-1164 (GMS). That action is currently pending before Judge Sleet and is subject to a pending motion for summary judgment of noninfringement; trial is scheduled for February 23, 2006.

The District of Delaware provides the best forum for the present action for several reasons. While there is not a complete overlap between the present action and the earlier consolidated District of Delaware action, half of the puzzle is the same: Impax's ANDA. Judge Sleet's familiarity with that ANDA and its underlying technology is a significant factor favoring transfer. Judge Sleet's familiarity was developed over the two years that those cases have been pending, and includes Impax's motion for summary judgment of noninfringement, which is currently pending and relies upon the same ANDA that is at issue in this case. Impax has filed its own declaratory judgment action in Delaware on November 9, 2006; that case has been docketed as Civil Action No. 05-772 and has been assigned to Judge Sleet. (Siem Decl. Ex. A.) Thus, judicial economy strongly favors transfer of the Impax portion of this case.[1]

In addition, this Court should transfer the present case to District of Delaware for several other reasons. The Southern District of New York is not the home of either Shire or Impax, but the District of Delaware *is* both Shire's and Impax's place of incorporation. Furthermore, at present, it does not appear that *any* witnesses for either Shire or Impax reside in New York. Not

---

[1] On December 19, 2005, Defendant Barr Laboratories, Inc. ("Barr") filed a motion to dismiss Shire's Complaint along with a Statement of Relatedness Pursuant to Local Rule 15 specifying that this action is related to 03-CV-1219 (PKC) and 03-CV-6632 (PKC). (*See* D.I. Nos. 7 and 8.) The litigations referenced by Barr are similar to the two earlier suits by Shire against Impax, but that Barr's ANDA is alleged to infringe the two earlier issued patents.

only are there no apparent witnesses in New York, there do not appear to be any operative facts

which occurred in New York. Moreover, at least one of the named inventors of the '768 patent

is outside of this Court's subpoena power, but appears to be within the District of Delaware's

subpoena power. Regarding Impax, most of its research and development witnesses are located

in California, but Impax's commercial center is located in Philadelphia, for which the District of

Delaware is a more convenient forum.

## STATEMENT OF FACTS

Shire is a pharmaceutical company that is incorporated in Delaware and has its principal

place of business in Maryland. (Compl. ¶ 4.) In its Complaint, Shire does not aver that it has

any connection with New York (*see id.*), and Shire's website does not indicate that it has any

offices in New York. (Siem Decl. Ex. B.)

Impax is a technology-based specialty pharmaceutical company and is incorporated in

Delaware. (Compl. ¶ 6.) Impax is headquartered in California and has its primary commercial

center in Philadelphia, Pennsylvania. (Siem Decl. Ex. C.) All of the research and development

of the formulation for the proposed products reflected in Impax's ANDA occurred in California.

The '768 patent is entitled "Sustained Release Delivery of Amphetamine Salts." The

named inventors are Richard Couch, Beth Burnside and Rong-Kun Chang and their residences

are given as Bryn Mawr, PA, Bethesda, MD and Rockville, MD, respectively. (*See* Compl. Ex.

A.) Of the three named inventors, at least Beth Burnside is no longer employed by Shire. Dr.

Burnside is currently the Vice President, Pharmaceutical Research, for Advancis Pharmaceutical

Corp. ("Advancis"). (Siem Decl. Ex. D.) Advancis is located in Germantown, Maryland. (Siem

Decl. Ex. E.) Bethesda and Germantown are more than 100 miles from the S.D.N.Y., but they

are not more than 100 miles from the District of Delaware. (Siem Decl. Ex. F.)

2

Impax's ANDA No. 76-852 is the basis for both the present action and the two earlier actions brought by Shire in the District of Delaware. (Siem Decl. Exs. G and H.) In those actions, Shire alleged that the same ANDA infringed two other patents: U.S. Patent Nos. 6,322,819 and 6,605,300. (*See id.*) Both of those actions, which have been consolidated, were filed by Shire in the District of Delaware and are currently pending before Judge Sleet. (*See* Siem Decl. Ex. I.) Briefing for summary judgment of noninfringement was completed on October 18, 2005. (*Id.* at D.I. 219.)

## ARGUMENT

**I.    This Court Can Transfer This Action to the District of Delaware**

Before considering whether this Court should transfer this action, it should consider whether it can. One of the requirements for transfer under section 1404(a) is that the action could have been brought in the forum to which transfer is sought:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

As Shire has already sued Impax – twice – in the District of Delaware for patent infringement based on the same ANDA for a generic version of Adderall XR®, it is clear that the Impax portion of this action also could have been filed there. As in the earlier litigations before Judge Sleet in the District of Delaware, that Court would also have had subject matter jurisdiction over this dispute. *See* 28 U.S.C. § 1338(a). The District of Delaware has personal jurisdiction over both Shire and Impax, as Delaware is their place of incorporation and venue in the District of Delaware would also be proper. *See* 28 U.S.C. § 1400(b).

With regards to Barr, Barr has been a party in numerous actions in the District of Delaware and is amenable to suit there. For example, Barr is a defendant in a patent

infringement litigation that recently had a *Markman* hearing. *See, e.g., Cephalon Inc. v. Barr Laboratories, Inc.*, 389 F. Supp. 2d 602 (D. Del. 2005). Furthermore, Impax believes that Barr transacts business in Delaware and contracts to supply goods and services in Delaware. As such, this action could have been filed in the District of Delaware as that Court would have had personal jurisdiction over Barr.

Therefore, this Court can sever the action against Impax and transfer it to the District of Delaware.

## II.    This Court Should Transfer This Action to the District of Delaware Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

This Court has analyzed the following factors when deciding whether to transfer an action under section 1404(a):

> (1) convenience of witnesses; (2) convenience of parties; (3) the locus of operative facts; (4) the ability to compel attendance of unwilling witnesses; (5) the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on totality of circumstances.

*Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 441 (S.D.N.Y. 2003).

### A.    Trial Efficiency and the Interests of Justice Favor Transfer

The interest of justice strongly favors transfer. Judge Sleet, in the District of Delaware, has been presiding over related litigations filed by Shire against Impax relating to the ANDA in suit since December 2003. (*See* Siem Decl. Ex. I.) As such, Judge Sleet has

4

developed familiarity with Impax's ANDA for a generic alternative to Adderall XR®. Due to

Judge Sleet's familiarity with Impax's ANDA, the technologies underlying the ANDA, the

parties and the previously conducted discovery, the interests of judicial economy would best be

served by transferring this action to the District of Delaware.

Similarly, Shire has also sued Barr twice alleging that Barr's ANDA for a generic

Adderall XR® infringed the same two earlier issued patents discussed above. In those two suits,

Shire filed against Barr in the S.D.N.Y. (which is Barr's home forum). Those cases were

consolidated and are currently pending before Judge Castel. As judicial economy favors the

present suit being separated and tried before the Judges that already have developed the relevant

knowledge base, Impax requests that this action be severed as to Barr and Impax so that Judge

Castel and Judge Sleet may try the cases.[2]

Impax anticipates that Shire will assert that efficiencies will be increased if there is only

one action against both Impax and Barr: a single suit is more efficient than two suits in different

jurisdictions. Although this may be true in some situations, it is not here. Judge Castel and

Judge Sleet have an existing familiarity with, respectively, Barr and Impax. Judicial economy

will be increased by having the judge who is familiar with the underlying ANDAs preside over

the new allegations made by Shire against those same ANDAs. In this situation, each case

should be able to reach trial with less judicial resources than if tried together in a single suit.

As judicial economy will be increased if the Impax portion of the case is transferred to

the District of Delaware, it is likely that resolution of the Impax case would be reached sooner in

the District of Delaware than in the S.D.N.Y. This faster track would be the equivalent of a less

congested docket that courts have considered in transferring cases under § 1404(a). *See, e.g.,*

---

[2]    However, if this Court does not grant Impax's motion to transfer the portion of the case related to Impax to the
District of Delaware, Impax is not requesting that it be severed from Barr.

*Comprehensive Care Corp. v. Bank of Tokyo Trust Co.*, No. 90 Civ. 4387 (MJL), 1991 U.S. Dist.
LEXIS 10433, at *15-16 (S.D.N.Y. July 29, 1991) (transferring case to the District of Delaware
and stating that "transfer to a less congested docket is especially appropriate in cases such as this
where defendants are likely to suffer if there are extensive pre-trial delays."). (Attached as Ex.
1.)

 Trial efficiency and the interests of justice strongly favor the transfer of this action to the
District of Delaware. This factor strongly favors transfer because the efficiencies of the Court –
and the parties – are increased by transferring this action.

 **B.**  **The Convenience of Witnesses Favors Transfer**

 Most, if not all, of Impax's fact witnesses regarding the research and development
embodied in its ANDA are located in Northern California. However, one of Impax's main
offices is located in Philadelphia, Pennsylvania. Philadelphia is closer to the District of
Delaware than it is to the S.D.N.Y. and there may be some relevant witnesses located in
Philadelphia. While the S.D.N.Y. and the District of Delaware may be equally convenient for
the California-based witnesses, the District of Delaware is more convenient for any Philadelphia-
based witnesses who might be called to testify if the present action proceeds to trial.

 Shire is incorporated in Delaware and is headquartered in Maryland. Presumably, any
research and development underlying the '768 patent occurred in Maryland. Maryland is closer
to the District of Delaware than it is to the S.D.N.Y. and, therefore, should be more convenient
for Shire's witnesses. Furthermore, Impax is not aware of any potential witnesses for Shire
located in New York and one would not expect to find any potential witnesses for any of the
issues in the Impax portion of this case in New York.

Since the District of Delaware is both Shire's and Impax's place of incorporation and is closer to Impax's primary commercial center in Philadelphia and Shire's headquarters in Maryland, the convenience of witnesses favors transfer from the S.D.N.Y. to the District of Delaware.

### C.     The Ability to Compel Attendance of Unwilling Witnesses

This Court lacks the subpoena power to compel the attendance of at least one of the three named inventors of the '768 patent: Beth Burnside. Dr. Burnside is no longer employed by Shire. Dr. Burnside reportedly resides and works in Maryland and is outside of this Court's subpoena power. However, Dr. Burnside appears to be within the District of Delaware's subpoena power. As Dr. Burnside is likely one of the three most important witnesses relating to the development of the '768 patent, this Court's inability to compel her attendance strongly favors transfer to the District of Delaware – where it is believed her attendance can be compelled. Similarly, if necessary, the District of Delaware may be able to compel the attendance of any other potential witnesses that no longer work for Shire but still reside in Maryland.

### D.     The Convenience of the Parties Favors Transfer

The S.D.N.Y. is not Shire's home forum and Shire does not appear to have any connection to this district other than the following: its lawyers are located here; it has a currently pending related litigation against Barr here; and its products are sold here. Impax does not even have that level of connections with the S.D.N.Y. In contrast, the District of Delaware is both Shire's and Impax's home forum as they are both incorporated there.

7

In sum, this factor favors transfer, since the District of Delaware is closer to Shire's headquarters in Maryland, transfer to District of Delaware would not be more inconvenient to Shire than the S.D.N.Y., since both Shire and Impax have chosen Delaware as their home forum.

**E.      The Weight Accorded to Plaintiff's Choice of Forum**

Although it can be an important factor, plaintiff's choice of forum is entitled to significantly less weight in this case because Shire did sue in its home forum. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. 01 Civ. 2671, 2001 U.S. Dist. LEXIS 18786, at *10 (S.D.N.Y. Nov. 19, 2001). (Attached as Ex. 2.)  Shire does not have a place of business in New York, nor did it identify any of its own activities that were specific to New York in its complaint. None of Impax's activities alleged by Shire in its complaint occurred in New York.  These factors minimize the weight to be given Shire's choice of forum.

**F.      Neutral Factors**

In the present case, none of the remaining factors appear to suggest that the action should not be transferred out of the S.D.N.Y.  The neutral factors include: the locus of operative facts supports transfer; the relative ease of access to sources of proof; the relative means of the parties; and the forum's familiarity with the governing law.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that its motion be granted.

January 6, 2006                          By:    /s/ Michael A. Siem
                                                Philip J. McCabe  (PM 4825)
                                                pmccabe@kenyon.com
                                                KENYON & KENYON LLP
                                                333 West San Carlos Street

Suite 600
San Jose, CA 95110
Telephone: (408) 975-7500
Facsimile: (408) 975-7501

Michael A. Siem (MS 9508)
msiem@kenyon.com
Kenyon & Kenyon LLP
One Broadway
New York, NY 10004
Telephone:  (212) 425-7200
Facsimile:  (212) 425-5288

*Attorneys for Impax Laboratories, Inc.*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
SHIRE LABORATORIES, INC.
                                              :
              Plaintiff,
                                              :
           - against -                                    No. 05 CV 8903 (RO)
                                              :
BARR LABORATORIES, INC. and
IMPAX LABORATORIES, INC.                      :

              Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## APPLICATION FOR DETERMINATION OF
## RELATEDNESS TO PRIOR ACTIONS

Defendant Barr Laboratories, Inc., by its attorneys Winston & Strawn LLP, hereby

requests that the above-captioned matter be evaluated as related, pursuant to Southern District of

New York Division of Business Rule 15(c), to two prior actions now pending in this Court:

Shire Laboratories, Inc. v. Barr Laboratories, Inc., No. 03 CV 1219 (PKC), and Shire

Laboratories, Inc. v. Barr Laboratories, Inc., No. 03 CV 6632 (PKC). These matters are

currently pending in this district before Judge P. Kevin Castel. Under Rule 15, these matters are

"related" to the instant case because there is a "convergence of parties." In filing the case,

Plaintiff failed to so indicate the existence of the prior matters for consideration by the Court in

initially assigning this matter under its rules. While consolidation with the two prior matters is

not warranted because "the pleadings are closed" and the Final Pretrial Order has been entered in

those cases (per order of 12/9/05), and would be inappropriate given that these are Hatch-

Waxman cases operating under a statutory duty to expedite resolution and Shire might attempt to

use consolidation as a basis for delaying resolution of those cases, there clearly would be

efficiency in having this matter supervised by the judge presiding over, and possessing knowledge of, the two prior existing matters.

Thus, if the Court determines that the matters are related, this matter should be reassigned to Judge Castel as provided by Rule 15.

Dated: December 19, 2005
New York, New York

BARR LABORATORIES, INC.

By: _____
Michael J. Friedman (MF-0251)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700

George C. Lombardi
John E. Mooney
Don J. Mizerk
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Christine J. Siwik
RAKOCZY MOLINO MAZZOCHI
   & SIWIK LLP
6 West Hubbard St., Suite 500
Chicago, IL 60610
(312) 527-2157

*Counsel for Defendant Barr Laboratories, Inc.*

TO:     Edgar H. Haug
        Porter Fleming
        Sandra Kuzmich
        FROMMER LAWRENCE & HAUG
        745 Fifth Avenue
        New York, NY  10151
        (212) 588-0800

*Counsel for Plaintiff Shire Laboratories, Inc.*

Michael A. Siem
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 908-6206

*Counsel for Defendant Impax Laboratories, Inc.*

# EXHIBIT  3

# ❮Shire

Quick Select

Search...  Go

Home> Locations

# Shire Office Locations

**SHIRE PLC**

**Chief Executive Officer:**
Matthew Emmens

**Address**
725 Chesterbrook Blvd.
Wayne, PA 19087 - 5637
USA

**Tel: +1 484 595 8800**
**Fax: +1 484 595 8200**

**Human Genetic Therapies**

**Executive Vice President of the genetic disease unit**
David Pendergast

**Address**
700 Main Street
Cambridge, MA 02139

**Tel: 617-349-0200**
**Fax: 617-613-4004**

**Manufacturing Site**

**Executive Vice President Global Supply Chain & Quality:**
John Lee

**Address**
11200 Gundry Lane
Owings Mills, MD 21117
USA

**Tel: +1 410 413 1000**

**Fax: +1 410 413 2000**

LSE Price 761.75p, +5.00p • NASDAQ Price 40.75$, +0.72 • Toronto Pri

updated every 15 mins (please refresh your page)

**Shire Share Price**
6th January 2005
Disclaimer | Legal Notice

# EXHIBIT   4



# IMPAX® LABORATORIES, INC.

OVERVIEW    PRODUCTS    INVESTOR RELATIONS    CAREERS    CONTACT

## Locations.

IMPAX is headquartered in Hayward, California, and has a full range of capabilities in both its Hayward and Philadelphia facilities. The Hayward facilities include four buildings; a 35,125 square foot research and development facility, a 50,400 square foot commercial manufacturing facility, a 14,400 square foot administration building, and a 65,000 square foot warehouse. Our 113,000 square foot facility in Philadelphia, Pennsylvania serves as our primary commercial center, housing accounting, sales and marketing, packaging, warehousing and distribution.

○ Hayward, CA
  ● Headquarters and Primary Research and Development Center
  ● Primary Manufacturing Center
  ● Administration Building
  ● Warehouse
○ Philadelphia, PA
  ● Primary Commercial Center

### Hayward, California
30831 Huntwood Avenue, Hayward CA 94544
Tel: (510) 476-2000 Fax: (510) 471-3200

**From the San Francisco Airport:**
○ Take Highway 101 south to 92 East/San Mateo Bridge/Hayward.
○ Take southbound I-880 and exit at Industrial Parkway East.
○ Drive east (i.e. crossway overpass) approximately 1 mile to Huntwood Ave.
○ Turn right onto Huntwood Ave. and drive approximately 1/4 mile.
○ IMPAX is on your right hand side, immediately after the Crown Lift Truck building.

**From San Jose:**
○ Follow the sign at the Airport to get on I-880.
○ Take northbound I-880 and exit at Whipple Road/Industrial Parkway.
○ Drive east on Whipple Road for approximately 1 mile to Huntwood Ave.
○ Turn left onto Huntwood Ave. and drive approximately one mile to IMPAX.
○ IMPAX is on the left hand side.

**From Northeast of Hayward:**
○ Take westbound I-580.
○ Take southbound I-880 and exit at Industrial parkway east.
○ Drive east (i.e. crossway overpass) approximately 1 mile to Huntwood Ave.
○ Turn right onto Huntwood Ave. and drive approximately 1/4 mile.
○ IMPAX is on your right hand side, immediately after the Crown Lift Truck building.

**From Southeast of Hayward:**

- Take Northbound I-680 and exit Mission Blvd.
- Continue down Mission Boulevard to Union City.
- Take a left on Whipple Rd.
- Continue down Whipple Rd. approximately two miles to Huntwood Avenue.
- Turn right onto Huntwood Ave. and drive approximately one mile to IMPAX.
- IMPAX is on the left hand side.

Top

## Philadelphia, Pennsylvania

3735 Castor Avenue, Philadelphia, PA 19124
Tel: (215) 289-2220 Fax: (215) 289-2223

**From the Philadelphia Airport:**
- Take I-95 north to Aramingo Avenue exit.
- Take I-95 north to Aramingo Avenue.
- At end of off ramp, turn right onto Aramingo Avenue.
- Turn right at Castor Avenue and drive approximately 1 mile.
- IMPAX is on your right just before the elevated train.

**From Northern/Central New Jersey:**
- Take I-95 (New Jersey Tpke) south towards Philadelphia/Camden.
- At New Jersey Turnpike Exit 4, keep RIGHT onto Ramp towards RT-73/Philadelphia/Camden.
- Take Route 73 towards Camden/Philadelphia.
- Keep left onto Route 90 West and cross over the Betsy Ross Bridge (toll).
- Keep right onto ramp towards Richmond Street.
- Once on ramp, keep left to stay on ramp towards Richmond St South.
- Turn left onto Richmond Street.
- Turn right onto Castor Ave and drive approximately 1 mile.
- IMPAX is on your right just before the elevated train.

**From Southern New Jersey:**
- Take Route 55 to Route 42 toward Philadelphia
- Keep left towards and over the Walt Whitman Bridge/I-76
- Stay I-76 to right on I-95 north
- Take I-95 north to Allegheny Avenue exit, Exit 25
- Turn right at end of off ramp onto Bath Street
- Turn right onto Allegheny Avenue
- Turn right onto Richmond Street
- Turn left at Castor Avenue and drive approximately 1 mile
- IMPAX is on your right just before the elevated train

**From Points West of Philadelphia:**
- Take I-76 East towards Philadelphia
- At exit 344, take the Vine Street Expressway east.
- Stay right to I-95 north.
- Take I-95 north to Aramingo Avenue exit.
- At end of off ramp, turn right onto Aramingo Avenue.
- Turn right at Castor Avenue and drive approximately 1 mile.
- IMPAX is on your right just before the elevated train.

**From Bucks/Montgomery Counties and Points North of Philadelphia:**
- Take Route 309 South to Cheltenham Avenue
- Continue on Cheltenham Avenue to dead end right on Tookany Creek Parkway.
- Take left onto Adams Avenue.
- Go North on the Roosevelt Boulevard, stay to the far right and take first right to the continuation of Adams Avenue.
- Follow Adams Avenue to slight right on Castor Avenue and drive approximately 3 miles.
- IMPAX is on your left just after the elevated train.

Top

**IMPAX Laboratories, Inc.,**
Hayward, CA 94544 U.S.A.

© 2002 **IMPAX** Laboratories, Inc.,
All rights reserved.
**View Legal and Copyright disclaimer.**

# EXHIBIT  5

**ADVANCIS**
PHARMACEUTICAL CORP™

ABOUT US    LEADERSHIP    BREAKTHROUGH    NEWSROOM    INVESTOR RELATIONS    CAREERS

officers    directors and senior advisors    scientific advisors

## Beth A. Burnside, Ph.D.
Vice President, Pharmaceutical Research

Edward M. Rudnic, Ph.D.

Robert C. Low

Darren W. Buchwald

Beth A. Burnside, Ph.D.

Susan P. Clausen, Ph.D.

Donald J. Treacy Jr., Ph.D.

Sandra E. Wassink



Beth A. Burnside, Ph.D. has served as our vice president, pharmaceutical research since August 2003. Dr. Burnside joined us in August 2002 as senior director, formulation development.

From 1993 to 2002, Dr. Burnside was employed by Shire Laboratories Inc. While at Shire she held management positions with increasing responsibilities in the pharmaceutics, pharmaceutical development and the advanced drug delivery organizations.

As vice president of the advanced drug delivery division, Dr. Burnside assisted in the development of the division's specialized controlled release and enhanced bioavailability oral delivery formulation and product strategy.

Prior to working at Shire, Dr. Burnside gained additional experience at Johnson & Johnson from 1991 to 1992 and at Schering-Plough Research from 1989 to 1991.

She received a B.S. in chemistry/mathematics from Muhlenberg College in Allentown, Pennsylvania and an M.S. in organic chemistry and a Ph.D. in physical-organic chemistry from Drexel University.

CONTACT US

Home >> Leadership >> Officers >> Beth A. Burnside, Ph.D.

20425 Seneca Meadows Parkway  Germantown, Maryland 20876  |  Telephone (301) 944-6600  |  Fax (301) 944-6700
© 2002 Advancis Pharmaceutical Corp.  All Rights Reserved.  Terms & Conditions  |  Privacy Policy

# EXHIBIT   6



**ADVANCIS**
PHARMACEUTICAL CORP™

| ABOUT US | LEADERSHIP | BREAKTHROUGH | NEWSROOM | INVESTOR RELATIONS | CAREERS |
|---|---|---|---|---|---|
| market opportunity | value proposition | product pipeline | commercial strategy | partnerships    contact us | |

## Contact Us

20425 Seneca Meadows Parkway
Germantown, MD 20876

Phone: 301-944-6600
Fax: 301-944-6700

**Business Development**
bd@advancispharm.com

**Media Relations**
media@advancispharm.com

**Investor Relations**
ir@advancispharm.com

**Webmaster**
webmaster@advancispharm.com

**Career Opportunities**
recruitment@advancispharm.com

Directions

For a listing of all of our job opportunities, Click Here

FACT SHEETS (PDF)

CONTACT US

Home >> About Us >> Contact Us

20425 Seneca Meadows Parkway  Germantown, Maryland 20876  l  Telephone (301) 944-6600  l  Fax (301) 944-6700
© 2002 Advancis Pharmaceutical Corp.  All Rights Reserved.  Terms & Conditions  l  Privacy Policy

# EXHIBIT  7

# GEOBYTES

| Up |
|----|
| Login |
| Home |

**Looking for FREE geographic page re-directs - click here**



**See me in the demo (Click Here)**



**Get yourself a $49 developers license (Click Here)**

## City Distance Tool

This City Distance Calculator service is provided for FREE by Geobytes, inc to assist you in determining the distance between two cities. **Click here to checkout our other FREE services.**

**It's Madness - In a blatant grab for market share...**

**Geobytes** is giving away **full 12 month trial subscriptions** of their revolutionary new Spam Killer - Geobytes *'m...*. You get to run *'m...* for 12 months - no payment - no obligation - and yes, the trial version is fully functional. To take advantage of this offer be sure to download and install your trial copy before they come to their senses. **Click here** to download a **FREE 12 months trial** of Geobytes *'m...*. *'m... it's the end of Spam...*



BTW We are currently giving away a **free geobytes T-shirt** to **each** person that **participates** in our new Geobytes *'m...* focus group. Click here to find out other reasons why you would want to join our focus group. - Adrian.

**Note: This city distance lookup tool is powered by GeoSelect version II.**

**Click here** to see the geographic distribution of visitors to the IP Locator. **Click here** to find out more about GeoReports, and how from **$29 per year** you can get one for your own site.

The distance between Wilmington, Delaware and Bethesda, Maryland

**The distance:**

| | |
|---|---|
| Origin: | Wilmington, Delaware, United States |
| Destination: | Bethesda, Maryland, United States |
| Distance in miles: | 98 |
| Distance in kilometers: | 158 |

Please note: The distance is calculated "as the crow flies". It uses the latitude and longitude of the cities to calculate the distance, so this may vary from the driving distances.

If you wish to lookup other cities, then you can use the form below.



City Distance Tool - Find the distance between 2 cities

[ Home ] [ Contact Us ] [ Support ] [ Forums ] [ Pricing ] [ Buy Now! ] [ Free Services ]
[ Merchandise ] [ IP Address Locator ] [ Trace Route Locator ] [ Spam Locator ]
[ Geobytes'm...... ]

# GEOBYTES

| Up |
| Login |
| Home |

**Looking for FREE
geographic page
re-directs -
click here**

See me in
the demo
(Click Here)

**Get yourself
a $49
developers
license
(Click Here)**

## City Distance Tool

**This City Distance Calculator service is provided for FREE by Geobytes, inc to assist you in
determining the distance between two cities. Click here to checkout our other FREE services.**

**It's Madness - In a blatant grab for market share...**
**Geobytes** is giving away **full 12 month trial subscriptions** of their revolutionary new
Spam Killer – Geobytes 'm..... You get to run 'm..... for 12 months - no payment - no
obligation - and yes, the trial version is fully functional. To take advantage of this offer be
sure to download and install your trial copy before they come to their senses.
Click here to download a **FREE 12 months trial** of Geobytes 'm.....
'm..... It's the end of Spam...

BTW We are currently giving away a free **geobytes T-shirt** to each person that **participates**
in our new Geobytes 'm..... focus group. Click here to find out other reasons why you would
want to join our focus group. - Adrian.

**Note: This city distance lookup tool is powered by GeoSelect version II.**

Click here to see the geographic distribution
of visitors to the IP Locator.
Click here to find out more about
GeoReports, and how from **$29 per year**
you can get one for your own site.

**The distance between Wilmington, Delaware and Germantown, Maryland**

**The distance:**

| | |
|---|---|
| Origin: | Wilmington, Delaware, United States |
| Destination: | Germantown, Maryland, United States |
| Distance in miles: | 99 |
| Distance in kilometers: | 160 |

Please note: The distance is calculated "as the crow flies". It uses the latitude and longitude of the cities to calculate the distance,
so this may vary from the driving distances.

If you wish to lookup other cities, then you can use the form below.

# EXHIBIT   8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------x
                                                 :
SHIRE LABORATORIES INC.,                         :
                                                 :
                          Plaintiff,             :
                                                 :       Civil Action No. ___0 3 - 1 1 6 4___
              v.                                 :
                                                 :
IMPAX LABORATORIES, INC.,                        :
                                                 :
                          Defendant.             :
                                                 :
------------------------------------------------x

## COMPLAINT

Plaintiff Shire Laboratories Inc. ("Shire"), by its attorneys, for its Complaint,

alleges as follows:

### Nature of the Action

1.      This is an action for patent infringement arising under the patent laws of

the United States, Title 35, United States Code.

### Jurisdiction and Venue

2.      This Court has original jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and

(c), and § 1400(b).

**The Parties**

4.      Shire is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1550 East Gude Drive, Rockville, Maryland 20850.

5.      Upon information and belief, defendant IMPAX Laboratories, Inc. ("Impax") is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 30831 Huntwood Avenue, Hayward, California 94544.

**Facts Common to All Claims for Relief**

6.      Shire is the owner of New Drug Application ("NDA") No. 21-303, which was approved by the Food and Drug Administration ("FDA") for the manufacture and sale of a pharmaceutical composition containing mixed amphetamine salts for the treatment of Attention Deficit Hyperactivity Disorder.  Shire US Inc. (a related company) markets and sells this composition in the United States under the trade name Adderall XR®.

7.      Upon information and belief, Impax submitted Abbreviated New Drug Application ("ANDA") No. 76-852 ("Impax's ANDA") to the FDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) seeking approval to engage in the commercial manufacture, use, and sale of an extended-release capsule containing a mixture of four amphetamine salts at the 30 mg strength.

8.      Impax sent Shire a "Notice Under 21 U.S.C. § 355(j)(2)(B)(i) and (ii) With Reference to U.S. Patent Nos. 6,322,819 and 6,605,300" dated November 13, 2003, ("Impax's Notice Letter" or the "Notice Letter").

2

**First Count**

9.     Shire repeats and realleges paragraphs 1 through 8 above as if fully set forth herein.

10.     United States Patent No. 6,322,819 ("the '819 patent"), entitled "Oral Pulsed Dose Drug Delivery System" (Exhibit A hereto), was duly and legally issued on November 27, 2001, to Shire upon assignment from Beth A. Burnside, Xiaodi Guo, Kimberly Fiske, Richard A. Couch, Donald J. Treacy, Rong-Kun Chang, Charlotte McGuinness, and Edward M. Rudnic. The '819 patent claims, *inter alia*, a pharmaceutical composition for one or more pharmaceutically active amphetamine salts.

11.     Pursuant to 21 U.S.C. § 355(b)(1), the '819 patent is listed in "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") as covering Shire's Adderall XR® product.

12.     Upon information and belief, Impax filed a paragraph IV certification for the '819 patent in ANDA No. 76-852 to obtain approval to engage in the commercial manufacture, use or sale of an extended-release capsule containing a mixture of four amphetamine salts at the 30 mg strength before the expiration of the '819 patent.

13.     21 U.S.C. § 355(j)(2)(B)(ii) requires that a letter notifying a patent holder of the filing of an ANDA containing a paragraph IV certification "include a detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid or will not be infringed." Likewise, 21 C.F.R. § 314.95(c)(6) requires a paragraph IV notification letter to include "[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not valid, unenforceable, or will not be infringed." The detailed statement is to include "(i) [f]or each claim of a patent alleged not to be infringed, a full and detailed explanation of why the

3

claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." *Id.*

14. Upon information and belief, at the time Impax sent its Notice Letter to Shire, Impax was aware of the statutory provisions and regulations referred to in paragraph 13, above.

15. In Impax's Notice Letter, Impax did not provide the detailed statement required, and therefore Impax failed to comply with the statutory provisions and regulations referred to in paragraph 13, above.

16. Upon information and belief, Impax's submission to the FDA of ANDA No. 76-852 with a paragraph IV certification for the '819 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of a drug product before the expiration of the '819 patent is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

17. Upon information and belief, Impax's commercial manufacture, use, sale, offer for sale, or importation into the United States of the proposed drug product that is the subject of ANDA 76-852, a capsule containing a mixture of four amphetamine salts at the 30 mg strength, will infringe one or more claims of the '819 patent.

18. Upon information and belief, Impax has been aware of the existence of the '819 patent, making the acts of infringement alleged above deliberate and willful, and thus rendering this case "exceptional" as that term is set forth in 35 U.S.C. § 285.

19. The acts of infringement set forth above will cause Shire irreparable harm for which it has no adequate remedy at law, unless Impax is preliminarily and permanently enjoined by this Court.

## Second Count

20.     Shire repeats and realleges paragraphs 1 through 19 above as if fully set forth herein.

21.     United States Patent No. 6,605,300 B1 ("the '300 patent"), entitled "Oral Pulsed Dose Drug Delivery System" (Exhibit B hereto), was duly and legally issued on August 12, 2003, to Shire upon assignment from Beth A. Burnside, Xiaodi Guo, Kimberly Fiske, Richard A. Couch, Donald J. Treacy, Rong-Kun Chang, Charlotte McGuinness, and Edward M. Rudnic. The '300 patent claims, *inter alia*, a pharmaceutical formulation for the delivery of a mixture of amphetamine base salts.

22.     Pursuant to 21 U.S.C. § 355(b)(1), the '300 patent is listed in "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") as covering Shire's Adderall XR® product.

23.     Upon information and belief, Impax filed a paragraph IV certification for the '300 patent in ANDA No. 76-852 to obtain approval to engage in the commercial manufacture, use or sale of an extended-release capsule containing a mixture of four amphetamine salts at the 30 mg strength before the expiration of the '300 patent.

24.     21 U.S.C. § 355(j)(2)(B)(ii) requires that a letter notifying a patent holder of the filing of an ANDA containing a paragraph IV certification "include a detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid or will not be infringed." Likewise, 21 C.F.R. § 314.95(c)(6) requires a paragraph IV notification letter to include "[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not valid, unenforceable, or will not be infringed." The detailed statement is to include "(i)

5

[f]or each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." *Id.*

25.    Upon information and belief, at the time Impax sent its Notice Letter to Shire, Impax was aware of the statutory provisions and regulations referred to in paragraph 24, above.

26.    In Impax's Notice Letter, Impax did not provide the detailed statement required, and therefore Impax failed to comply with the statutory provisions and regulations referred to in paragraph 24, above.

27.    Upon information and belief, Impax's submission to the FDA of ANDA No. 76-852 with a paragraph IV certification for the '300 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of a drug product before the expiration of the '300 patent is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

28.    Upon information and belief, Impax's commercial manufacture, use, sale, offer for sale, or importation into the United States of the proposed drug product that is the subject of ANDA 76-852, a capsule containing a mixture of four amphetamine salts at the 30 mg strength, will infringe one or more claims of the '300 patent.

29.    Upon information and belief, Impax has been aware of the existence of the '300 patent, making the acts of infringement alleged above deliberate and willful, and thus rendering this case "exceptional" as that term is set forth in 35 U.S.C. § 285.

30.    The acts of infringement set forth above will cause Shire irreparable harm for which it has no adequate remedy at law, unless Impax is preliminarily and permanently enjoined by this Court.

RLF1-2688879-1

**Prayer for Relief**

WHEREFORE, plaintiff respectfully requests the following relief:

(a)    A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(2)(A), Impax's submission to the FDA of ANDA 76-852 with paragraph IV certifications to obtain approval for the commercial manufacture, use or sale in the United States of its 30 mg mixed amphetamine salts drug product was an act of infringement of the '819 and '300 patents;

(b)    A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Impax's 30 mg mixed amphetamine salts drug product that is the subject of ANDA 76-852 shall be no earlier than the date on which the last of the '819 and '300 patents expires;

(c)    A judgment pursuant to 35 U.S.C. § 271(e)(4)(A) preliminarily and permanently enjoining Impax and its officers, agents, servants, employees and attorneys, and those persons in active concert or participation or privity with them or any of them, from engaging in the commercial manufacture, use, offer to sell or sale within the United States or importation into the United States, of the 30 mg mixed amphetamine salts drug product that is the subject of ANDA 76-852 until the expiration of the last of the '819 and '300 patents;

(d)    A judgment awarding Shire damages or other monetary relief, pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, if Impax commercially manufactures, uses, offers for sale, sells or imports any product that infringes either the '819 or '300 patents;

(e)    A judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional case and awarding Shire its attorneys' fees;

(f)    A judgment awarding Shire its costs and expenses in this action; and

7

(g)    A judgment awarding Shire any other and further relief as this Court may

deem just and proper.

Dated: December 29, 2003

*Of Counsel:*

Edgar H. Haug
Steven M. Amundson
Sandra Kuzmich
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
Telephone:  (212) 588-0800
Facsimile:  (212) 588-0500

Fred H. Bartlit, Jr.
Peter B. Bensinger, Jr.
Jill Trumbull-Harris
BARTLIT BECK HERMAN
PALENCHAR & SCOTT
54 West Hubbard Street
Chicago, Illinois 60610
Telephone: (312) 494-4400
Facsimile: (312) 494-4440

Frederick L. Cottrell III (#2555)
Chad Shandler (#3796)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
Telephone: (302) 651-7700
Facsimile: (302 651-7701

*Attorneys for Plaintiff*
*Shire Laboratories Inc.*

8

RLF1-2688879-1

# EXHIBIT   9

COPY**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------x
                                    :
                                    :
SHIRE LABORATORIES INC.,            :
                                    :
          Plaintiff,                :
                                    :          Civil Action No.   0 5 - 2 0
     v.                             :
                                    :
IMPAX LABORATORIES, INC.,           :
                                    :
          Defendant.                :
                                    :
-----------------------------------x
```

## COMPLAINT

Plaintiff Shire Laboratories Inc. ("Shire"), by its attorneys, for its Complaint, alleges as follows:

### Nature of the Action

1.   This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

### Jurisdiction and Venue

2.   This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.   Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c), and § 1400(b).

RLF1-2830242-1

## The Parties

4.    Shire is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1550 East Gude Drive, Rockville, Maryland 20850.

5.    Upon information and belief, defendant IMPAX Laboratories, Inc. ("Impax") is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 3081 Huntwood Avenue, Hayward, California  94544.

## Facts Common to All Claims for Relief

6.    Shire is the owner of New Drug Application ("NDA") No. 21-303, which was approved by the Food and Drug Administration ("FDA") for the manufacture and sale of a pharmaceutical composition containing mixed amphetamine salts for the treatment of Attention Deficit Hyperactivity Disorder.  Shire US Inc. (a related company) markets and sells this composition in the United States under the trade name Adderall XR®.

7.    Upon information and belief, Impax submitted an amendment to Abbreviated New Drug Application ("ANDA") No. 76-852 ("Impax's ANDA"), which it filed under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), to obtain approval to engage in the commercial manufacture, use, and sale of an extended-release capsule containing a mixture of four amphetamine salts at 5 mg, 10mg, 15 mg, 20 mg, and 25 mg dosage strengths.

8.    Impax sent Shire a "Notice Under 21 U.S.C. § 355(j)(2)(B)(i) through (iv) With Reference to U.S. Patent Nos. 6,322,819 and 6,605,300" dated December 1, 2004, ("Impax's Notice Letter" or the "Notice Letter").

2

## First Count

9.     Shire repeats and alleges paragraphs 1 through 8 above as if fully set forth herein.

10.     United States Patent No. 6,322,819 ("the '819 patent"), entitled "Oral Pulsed Dose Drug Delivery System" (Exhibit A hereto), was duly and legally issued on November 27, 2001, to Shire upon assignment from Beth A. Burnside, Xiaodi Guo, Kimberly Fiske, Richard A. Couch, Donald J. Treacy, Rong-Kun Chang, Charlotte McGuinness, and Edward M. Rudnic. The '819 patent claims, *inter alia*, a pharmaceutical composition for one or more pharmaceutically active amphetamine salts.

11.     Pursuant to 21 U.S.C. § 355(b)(1), the '819 patent is listed in "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") as covering Shire's Adderall XR® product.

12.     Upon information and belief, Impax amended ANDA No. 76-852 to include a paragraph IV certification for the '819 patent to obtain approval to engage in the commercial manufacture, use or sale of an extended-release capsule containing a mixture of four amphetamine salts at 5 mg, 10mg, 15 mg, 20 mg, and 25 mg dosage strengths before the expiration of the '819 patent.

13.     21 U.S.C. § 355(j)(2)(B)(ii) and (iii) require that a letter notifying a patent holder of the filing of an amended ANDA containing a paragraph IV certification "include a detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid or will not be infringed." Likewise, 21 C.F.R. § 314.95(c)(6) requires a paragraph IV notification letter to include "[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not valid, unenforceable, or will not be infringed." The detailed statement is to include "(i) [f]or each claim of a patent alleged not to be infringed, a full and detailed

3

explanation of why the claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be

invalid or unenforceable, a full and detailed explanation of the grounds supporting the

allegation." *Id.*

14.    Upon information and belief, at the time Impax sent its Notice Letter to Shire,

Impax was aware of the statutory provisions and regulations referred to in its paragraph 13,

above.

15.    In Impax's Notice Letter, Impax did not provide the detailed statement required,

and therefore Impax failed to comply with the statutory provisions and regulations referred to in

paragraph 13, above.

16.    Upon information and belief, Impax's submission to the FDA of amended ANDA

No. 76-852 with a paragraph IV certification for the '819 patent for the purpose of obtaining

approval to engage in the commercial manufacture, use, or sale of a drug product before the

expiration of the '819 patent is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

17.    Upon information and belief, Impax's commercial manufacture, use, sale, offer

for sale, or importation into the United States of the proposed drug products that are the subject

of amended ANDA 76-852, capsules containing mixtures of four amphetamine salts at 5 mg,

10mg, 15 mg, 20 mg, and 25 mg dosage strengths, will infringe one or more claims of the '819

patent.

18.    Upon information and belief, Impax has been aware of the existence of the '819

patent, making the acts of infringement alleged above deliberate and willful, and thus rendering

this case "exceptional" as that term is set forth in 35 U.S.C. § 285.

19.    The acts of infringement set forth above will cause Shire irreparable harm for which it has no adequate remedy at law, unless Impax is preliminarily and permanently enjoined by this Court.

**Second Count**

20.    Shire repeats and realleges paragraphs 1 through 19 above as if fully set forth herein.

21.    United States Patent No. 6,605,300 ("the '300 patent"), entitled "Oral Pulsed Dose Drug Delivery System" (Exhibit B hereto), was duly and legally issued on August 12, 2003, to Shire upon assignment from Beth A. Burnside, Xiaodi Guo, Kimberly Fiske, Richard A. Couch, Donald J. Treacy, Rong-Kun Chang, Charlotte McGuinness, and Edward M. Rudnic. The '300 patent claims, *inter alia*, a pharmaceutical formulation for the delivery of a mixture of amphetamine base salts.

22.    Pursuant to 21 U.S.C. § 355(b)(1), the '300 patent is listed in "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") as covering Shire's Adderall XR® product.

23.    Upon information and belief, Impax amended ANDA No. 76-852 to include a paragraph IV certification for the '300 patent to obtain approval to engage in the commercial manufacture, use or sale of an extended-release capsule containing a mixture of four amphetamine salts at 5 mg, 10mg, 15 mg, 20 mg, and 25 mg dosage strengths before the expiration of the '300 patent.

24.    21 U.S.C. § 355(j)(2)(B)(ii) and (iii) require that a letter notifying a patent holder of the filing of an amended ANDA containing a paragraph IV certification "include a detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid or

5

will not infringed." Likewise, 21 C.F.R. § 314.95(c)(6) requires a paragraph IV notification letter to include "[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not valid, unenforceable, or will not be infringed." The detailed statement is to include "(i) [f]or each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting this allegation." *Id.*

25.     Upon information and belief, at the time Impax sent its Notice Letter to Shire, Impax was aware of the statutory provisions and regulations referred to in paragraph 24, above.

26.     In Impax's Notice Letter, Impax did not provide the detailed statement required, and therefore Impax failed to comply with the statutory provisions and regulations referred to in paragraph 24, above.

27.     Upon information and belief, Impax's submission to the FDA of amended ANDA No. 76-852 with a paragraph IV certification for the '300 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of a drug product before the expiration of the '300 patent is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

28.     Upon information and belief, Impax's commercial manufacture, use, sale, offer for sale, or importation into the United States of the proposed drug products that are the subject of amended ANDA 76-852, capsules containing mixtures of four amphetamine salts at 5 mg, 10mg, 15 mg, 20 mg, and 25 mg dosage strengths, will infringe one or more claims of the '300 patent.

29.     Upon information and belief, Impax has been aware of the existence of the '300 patent, making the acts of infringement alleged above deliberate and willful, and thus rendering this case "exceptional" as that term is set forth in 35 U.S.C. § 285.

30.     The acts of infringement set forth above will cause Shire irreparable harm for which it has no adequate remedy at law, unless Impax is preliminarily and permanently enjoined by this Court.

### Prayer for Relief

WHEREFORE, Shire respectfully requests the following relief:

(a)     A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(2)(A), Impax's submission to the FDA of amended ANDA 76-852 with paragraph IV certifications to obtain approval for the commercial manufacture, use or sale in the United States of its 5 mg, 10mg, 15 mg, 20 mg, and 25 mg mixed amphetamine salts drug products was an act of infringement of the '819 and '300 patents;

(b)     A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Impax's 5 mg, 10mg, 15 mg, 20 mg, and 25 mg mixed amphetamine salts drug products that are the subject of amended ANDA 76-852 shall be no earlier than the date on which the last of the '819 and '300 patents expires;

(c)     A judgment pursuant to 35 U.S.C. § 271(e)(4)(A) preliminarily and permanently enjoining Impax and its officers, agents, servants, employees and attorneys, and those persons in active concert or participation or privity with them or any of them, from engaging in the commercial manufacture, use, offer to sell or sale within the United States or importation into the United States, of the 5 mg, 10mg, 15 mg, 20 mg, and 25 mg mixed amphetamine salts drug

RLF1-2830242-1

products that are the subject of amended ANDA 76-852 until the expiration of the last of the

'819 and '300 patents;

(d)     A judgment awarding Shire damages or other monetary relief, pursuant to 35

U.S.C. §§ 271(e)(4)(C) and 284, if Impax commercially manufactures, uses, offers for sale, sells

or imports any product that infringes either the '819 or '300 patents;

(e)     A judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional

case and awarding Shire its attorneys' fees;

(f)     A judgment awarding Shire its costs and expenses in this action; and

(g)     A judgment awarding Shire any other and further relief as this Court may deem

just and proper.

_____
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Richard, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for Plaintiff Shire Laboratories Inc.*

OF COUNSEL:

Edgar H. Haug
Steven M. Amundson
Porter F. Fleming
Sandra Kuzmich
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151
Telephone: (212) 588-0800
Facsimile: (212) 588-0500

Dated: January 13, 2005

RLF1-2830242-1

8

# EXHIBIT   10

LEXSEE 2003 US DIST LEXIS 4594

**BAYER BIOSCIENCE N.V., Plaintiff, v. MONSANTO COMPANY, Defendant.**

**C.A. No. 03-023 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 4594*

**March 25, 2003, Decided**

**DISPOSITION:** [*1] Motion to transfer case granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant company moved pursuant to *28 U.S.C.S. § 1404*(a) to transfer plaintiff patentee's action alleging that the company was engaging in activity that infringed its patents.

**OVERVIEW:** For the two years, the patentee and the company engaged in litigation in another district court regarding four other patents assigned to the patentee. The other district court issued a summary judgment order finding that all four of the patents ere unenforceable. The patentee filed the present action involving a related patent, and on the same day the company filed a declaratory judgment action for noninfringement in the other district court. The court held that although the patentee's action was first-filed, the § 1404(a) factors nevertheless weighed in favor of transferring the dispute in the other district court. Given the on-going relationship that the other district court had with the same parties, and the same, or related, patent or patents, the court concluded that the public and private interests were sufficient to tip the balance of convenience strongly in favor of transfer.

**OUTCOME:** The court granted the company's motion to transfer.

**LexisNexis(R) Headnotes**

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN1] Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] *28 U.S.C.S. § 1404*(a) provides that for the convenience of the parties and the witnesses, in the interest of justice, the court may transfer an action to any other district where it might have been brought.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3] When considering a motion to transfer, the court must determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. This inquiry requires a multi-factor balancing test embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. Among the relevant public interests are: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public policies of the fora.

**COUNSEL:** For BAYER BIOSCIENCE N V, plaintiff: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For MONSANTO COMPANY, defendant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

2003 U.S. Dist. LEXIS 4594, *

For MONSANTO COMPANY, counter-claimant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAYER BIOSCIENCE N V, counter-defendant: George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to *28 U.S.C. § 1404(a)*. For the following reasons, the court will grant this motion. [*2]

### II. BACKGROUND

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents-in-suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto filed a declaratory judgment action for noninfringement in the Missouri District Court.

### III. DISCUSSION

#### A. The "First-Filed" Rule

[HN1] Where two patent lawsuits involving the same claims are filed in [*3] different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993)*. The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id. at 937*.

Applying the first-filed rule, Bayer now argues that it would be improper for the court to transfer this first-filed action to the Eastern District of Missouri. While the court does not dispute that this action is first-filed, albeit only by several hours, for the following reasons, the court concludes that the *1404(a)* factors nevertheless weigh in favor of litigating this dispute in Missouri. *See id. at 937-38* (noting that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

#### B. *Section 1404(a)*

*Section 1404(a)* [HN2] provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer [*4] this action to "any other district where it might have been brought." *28 U.S.C. § 1404(a)*. Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. n1 Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*.

n1 As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

[HN3] When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' *Id*. This inquiry requires "a multi-factor balancing test" [*5] embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879*. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they

could not be produced in the alternative forum. n2 *Id. at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

> n2 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

[*6]

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the ongoing relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

## IV. CONCLUSION [*7]

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. Bayer's Motion for Leave to File a Sur-Reply (D.I. 10) is GRANTED as unopposed.

> 2. Monsanto's Motion to Transfer this case (D.I. 5) is GRANTED.

> 3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

Dated: March 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE